NEILSEN ET AL., APPELLANTS, *v.*
BARBERTON CITIZENS HOSPITAL ET AL.,
APPELLEES.

(No. 10390—Decided May 26, 1982.)

*Mr. Peter T. Zackaroff,* for appellants.
*Mr. K. R. Aughenbaugh* and *Mr. R. R. Strong,* for appellees.

BELL, J. On March 20, 1981, plaintiffs, husband and wife, filed a complaint to recover damages for personal injuries suffered by Virginia Neilsen, and for the loss of her companionship, consortium, and society by Andrew Neilsen, both damage claims having their origin in the alleged negligence of E. Dills, Jane Doe Nelson, and Barberton Citizens Hospital.

Plaintiffs state in their complaint that on September 28, 1965, Virginia Neilsen, while confined in Barberton Citizens Hospital, underwent surgery; that on that same date E. Dills and Jane Doe Nelson were employed by defendant Barberton Citizens Hospital as nurses and were assigned as instrument nurses in the operating room during the course of the surgery performed on Virginia Neilsen.

Plaintiffs further allege that during the performance of surgery upon Mrs. Neilsen, a surgical needle was left within her body and was not discovered until March 26, 1979, and, "that the leaving of said surgical needle * * * directly and proximately resulted from the negligence of the Defendants, E. Dills and Jane Doe Nelson, nurses, who were responsible to

account for all surgical instruments used during the course of said surgery * * *."

Paragraph 7 of the aforesaid complaint alleges that Virginia Neilsen, as a proximate result of the negligence of Dills and Nelson, sustained severe injuries to her body which are permanent in nature and that she suffered great pain and mental anguish for which she seeks damages in the aggregate amount of $500,000.

Andrew Neilsen seeks to recover $2,500 paid by him for medical treatment of his wife and damages for loss of services and consortium of his wife in the amount of $50,000.

On June 3, 1981, defendant Barberton Citizens Hospital moved the court for an order of partial summary judgment on the bases that the statute of limitations barred plaintiffs' claim against it, and that no genuine issue of fact existed as to the barring of the action as shown by the pleadings, affidavit, and supporting brief.

On September 25, the trial court sustained defendant Barberton Citizens Hospital's motion and "there being no reasonable cause for delay" rendered judgment in favor of defendant; plaintiffs appeal from this order and present two claims of error, the first of which is as follows:

"The trial court erred in holding that the Ohio Medical Malpractice Act, Revised Code Section 2305.11, applies to an action sounding in negligence which accrued on September 28, 1965, but was not discovered until March 26, 1979."

The issue then before us is: Does the one-year statute of limitations of R.C. 2305.11(A) bar Mrs. Neilsen's action?

Cases directly pertaining to this matter are relatively few, but are nearly unanimous in holding that an action against a *nurse* for negligence committed in her occupational capacity cannot be deemed one for malpractice, and therefore, a statute of limitations for malpractice is not available as a defense to a nurse in such action. See Annotation,

8 A.L.R. 3d 1336; *Isenstein* v. *Malcomson* (1929), 227 App. Div. 66, 236 N.Y.Supp. 641; *Wolff* v. *Jamaica Hosp.* (1960), 11 App. Div. 2d 801, 205 N.Y.Supp. 2d 152; *Richardson* v. *Doe* (1964), 176 Ohio St. 370 [27 O.O.2d 345]; *Kambas* v. *St. Joseph's Mercy Hosp.* (1973), 389 Mich. 249, 205 N.W. 2d 431; and *Bell* v. *Coen* (1975), 48 Ohio App. 2d 325 [2 O.O.3d 458].

*Richardson* v. *Doe, supra,* the leading case in Annotation, 8 A.L.R. 3d 1336, presents the basic thesis for the above view. A nurse by the "very nature of her occupation is prohibited from exercising an independent judgment" in the areas of diagnosing or treating symptoms or of prescribing treatments or medication. A nurse has no authority to practice medicine.

In sum, the *Richardson* court determined that (1) lack of due care by a nurse could not be included in the limited area of negligence constituting "malpractice," and (2) that such a lack of due care on the part of a nurse was ordinary negligence and actions against nurses for injuries resulting therefrom were subject to a two-year statute of limitations. R.C. 2305.10.

Our Ohio Supreme Court recently confirmed, in *Lombard* v. *Medical Center* (1982), 69 Ohio St. 2d 471 [23 O.O.3d 410], that the *Richardson* holding of non-inclusion of nurses within the protection of a one-year statute of limitations for malpractice actions remains the law in Ohio:

" 'If the General Assembly had wished to protect groups other than those traditionally associated with malpractice, it should have listed the ones to be covered * * *.

" 'There is no compelling reason for a nurse to be given the protection of a one-year statute of limitations. A nurse, although obviously skilled and well trained, is not in the same category as a physician who is required to exercise his independent judgment on matters which may mean the difference between life and

death * * *.' " *Richardson* v. *Doe, supra,* at 372-373, as quoted in *Lombard, supra,* at 473.

"* * * neither of these cases presents an action in malpractice. Rather, appellants have alleged negligence against individuals whose occupations are not among those enumerated in R.C. 2305.11(A) or within the common-law definition of 'malpractice.' *Therefore, R.C. 2305.11(A) may not bar an action against the hospitals who are their employers.*" (Emphasis ours.) *Lombard, supra,* at 473-474.

The emphasized language above appears determinative as to the statute of limitations applicable to defendant hospital.

The hospital does not deny its status as employer of the defendant nurses; the hospital, on the basis of respondeat superior, is in no better position than that of its agent. Therefore, in the instant cause the defendant hospital is not afforded the protection of the one-year statute of limitations for malpractice actions as contained in R.C. 2305.11. We determine then that under these circumstances the two-year statute of limitations for bodily injury actions (R.C. 2305.10) is applicable to an action against the hospital-employer as it would be to an action against the nurse-employee. *Richardson, supra;* and *Avellone* v. *St. John's Hosp.* (1956), 165 Ohio St. 467 [60 O.O. 121].

We are constrained to find that the negligence cause against the nurses, and the hospital-appellee herein, does not appear to be an action to which the limitations and protections of R.C. 2305.11 properly apply. We say this with particular regard to the determination by the *Lombard* majority that the term "malpractice" as utilized in R.C. 2305.11 has a limited, common-law definition. *Grogan* v. *Garrison* (1875), 27 Ohio St. 50, 63; *Hocking Conserv. Dist.* v. *Dodson-Lindblom Assoc.* (1980), 62 Ohio St. 2d 195 [16 O.O.3d 217]; *Richardson, supra.*

The next issue logically, then, is from what date does the two-year statute begin to run? Where a needle is negligently left in a surgical patient's body does that undiscovered act toll the running of the statute of limitations until the time of discovery? A survey of Ohio case law reveals two cases of major significance: *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164 [54 O.O.2d 283], and *Melnyk* v. *Cleveland Clinic* (1972), 32 Ohio St. 2d 198 [61 O.O.2d 430]. *Wyler, supra,* held that a cause of action for medical malpractice accrues at the latest when the physician-patient relationship finally terminates. While *Wyler, supra,* was not a foreign object case, but rather one involving the problems faced in a "stale claim" for medical malpractice, the dispute therein did concern the date upon which the statute of limitations commenced to run in a medical malpractice cause. It is interesting to note that the *Wyler* court felt compelled to refrain from adopting judicially a medical malpractice discovery rule which had so clearly been legislatively rejected. Justice Herbert, in writing for the majority, remarked that where the patient's injury does not become apparent contemporaneously with the negligent act complained of, an application of the rule that the cause of action exists from the time of the commission of the negligent act may result in an unconscionable situation where the statute of limitations bars the injured person's right before he is aware of its existence. Though the syllabus of the opinion reflects the constrained holding of the court, namely that the termination of the physician-patient relationship is the latest time at which a medical malpractice action may accrue, it is also of value to note the majority's criticisms of such a determination which include that the termination of the physician-patient relationship bears no logical relationship to the injury incurred. In sum, the *Wyler* court concluded that there was much to recommend the adoption of the discovery rule but was con-

vinced that to do so would place the court in the untenable position of having judicially "legislated" in the face of an opposite intent of the legislature.

Then came *Melnyk* v. *Cleveland Clinic, supra.* A footnote to the *Melnyk* opinion, also that of Justice Herbert, indicates the stated inquiry of the opinion, *i.e.,* "When a metallic forceps and a nonabsorbent sponge are negligently left in a surgical patient's body, does that act toll the running of the statute of limitation governing a resultant action for damages?" is "* * * central to the cause and obtains, in principle," *regardless of whether the cause is "treated" as an action "belonging under R.C. 2305.10 or under R.C. 2305.11."* (Emphasis ours.) *Melnyk, supra,* at 199. This note then leaves little doubt that *Melnyk, supra,* is applicable to the instant cause.

The syllabus of the case states as follows:

"Where a metallic forceps and a nonabsorbent sponge are negligently left inside a patient's body during surgery, the running of the statute of limitation governing a claim therefor is tolled until the patient discovers, or by the exercise of reasonable diligence should have discovered, the negligent act. (*Wyler* v. *Tripi,* 25 Ohio St. 2d 164 [54 O.O.2d 283], distinguished.)"

The facts presented to the court in *Melnyk, supra,* were not "akin to those" of *Wyler, supra.* Under the facts of *Melnyk* the balancing of the problems faced by the defense in a "stale" claim for medical malpractice against the potential extinguishment of a legitimate, but unknown claim was not necessary. The court deemed the leaving of a metallic forceps and nonabsorbent sponge in a surgical patient's body negligence as a matter of law. *Melnyk's* holding appears not to disturb *Wyler, supra.*

In that no "stale claim" is involved in *Melnyk,* the court remarked that problems of proof and defense inherent in stale medical malpractice claims "dwin-dle" in foreign-object cases. As stated in *Fernandi* v. *Strully* (1961), 35 N.J. 434, 450, 173 A. 2d 277, *op. cit. Melnyk, supra,* note at 201:

" 'It must be borne in mind that Mrs. Fernandi's claim does not raise questions as to her credibility nor does it rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation * * *.' "

The surgical needle was discovered on March 26, 1979; the instant complaint was filed on March 20, 1981. Applying the discovery rule to the within cause, we find that Virginia Neilsen's cause of action accrued on the date of discovery of the needle, and hence, the instant complaint as to Virginia Neilsen was timely filed.

We, therefore, find appellants' first claim of error to be meritorious.

The second assignment of error pertains to Mr. Neilsen's cause of action and states as follows:

"The trial court erred in holding that the statute of limitations of Revised Code Section 2305.09 which controls appellant, Andrew M. Neilsen's claim for relief commenced on September 25, 1964 [*sic*], the occurrence of the alleged negligent act."

We find no such specific language in the court's finding and order; however, one may perceive that the order implicitly so holds. Our reading of *Amer* v. *Akron City Hosp.* (1976), 47 Ohio St. 2d 85 [1 O.O.3d 51], lends support to such a determination by a trial court. The syllabus of *Amer, supra,* states:

"An action by a husband for loss of consortium, loss of services, and medical expenses, arising from an alleged medical malpractice upon his wife, is governed by the time limitation set forth in R.C. 2305.09(D) and must be commenced within the period prescribed thereby, *which period is not tolled until termination of the physician-patient relationship.*" (Emphasis ours.)

As in *Amer, supra,* "proper disposition of this appeal" mandates that we

recognize at the outset that Mr. Neilsen's action is not one for negligence, although its origin lay in such acts. The *Amer* court makes reference to *Kraut* v. *Cleveland Ry. Co.* (1936), 132 Ohio St. 125 [7 O.O. 226], wherein it was determined that a husband's action for consequential damages for injury to a spouse by a tortfeasor was not an action for "bodily injury" within the scope of the two-year limitation of R.C. 2305.10 but was within the four-year limitation of R.C. 2305.09(D).

The difficulty the appellant husband faced in *Amer, supra,* was that, not being a party to the contract between his spouse and her physician, there was no contractual duty, as to him, of continuing care; it is the contractual duty between physician and patient of continuing medical care upon which the termination rule is based.

Likewise in considering the application of the discovery exception to the time limitation of R.C. 2305.09 upon appellant husband's action herein for consequential damages, we must emphasize the differing bases upon which the causes of action for patient and spouse rest.

*Melnyk, supra,* at 202, expressly indicates the reasoning behind its adoption of the discovery exception in foreign object cases:

"* * * pressures associated with modern surgeon-patient relationships supply an even sounder and broader basis for announcing an exception to the general rule * * *. Hence, we base our reasoning not only upon an absence of the vexatious inequities usually associated with the entertaining of 'stale' medical claims, but also upon matters of sound public policy, springing from the absolute and irrevocable dependence of patient upon surgeon during surgery and from the huge increase in societal or public medicine with its lamentable but concomitant lessening of the fiercely private surgeon-patient relationship * * *."

Clearly our Supreme Court, in *Amer, supra,* chose not to extend to a patient's spouse the scope of the physician-patient relationship termination rule. As noted earlier, that decision was based in part upon a consideration of the privity of the contractual relationship between doctor and patient. The *Melnyk* decison to permit application of the tolling discovery rule in foreign object cases is partially, if not greatly, based upon the privity of relationship between patient and physician during the course of surgery, the absolute dependence of patient upon surgeon, and the public policy considerations stemming therefrom. That privity of relationship does not include the spouse of the patient. Hence, in light of the declination of the *Amer* court to apply the termination rule to a spouse's action for consequential damages, and in light of our perusal of the public policy considerations behind *Melnyk, supra,* we also decline to encompass the patient's spouse within the circle of discovery exception benefit.

We find no merit in assignment of error two. Judgment is reversed as to Virginia Neilsen's cause and is affirmed as to that of her husband.

*Judgment accordingly.*

MAHONEY, P.J., and VICTOR, J., concur.