HOLMAN ET AL., APPELLEES, *v.* GRANDVIEW HOSPITAL & MEDICAL CENTER, APPELLANT.

HOLMAN ET AL., APPELLANTS, *v.* GRANDVIEW HOSPITAL & MEDICAL CENTER, APPELLEE.

(Nos. CA 9961 and CA 10147—Decided March 12, 1987.)

*Wristen & Ucker Co., L.P.A., Ellen L. Wristen* and *David A. Ucker,* for William F. and Bonnie Holman.

*Miller, Finney & Clark* and *Jerome Menz,* for Grandview Hospital & Medical Center.

WOLFF, J. This is a hospital injury case. The case was tried to a jury, which returned a verdict in favor of the plaintiffs, William and Bonnie Holman, in the amount of $100,800. The trial court entered judgment against the defendant, Grandview Hospital and Medical Center ("Grandview Hospital"), for $100,000, thus bringing the final damage amount into conformity with the plaintiffs' prayer for relief. It is from this judgment that Grandview Hospital appeals in case No. CA 9961. The trial court subsequently denied the Holmans' motion for prejudgment interest pursuant to R.C. 1343.03(C). It

is from this ruling that the Holmans' appeal in case No. CA 10147. These two cases have been consolidated on appeal.

## Case No. CA 9961

William Holman was admitted to Grandview Hospital on January 16, 1983 to have back surgery. Holman had injured his back in 1959, 1966 and 1980. The 1980 injury resulted in Holman's being declared permanently disabled by the Industrial Commission of Ohio. Holman had also had surgery on his back in 1980.

As noted, Holman was admitted on January 16, 1983. He was scheduled for spinal fusion surgery on January 19. The admitting order for medications provided for intramuscular ("IM") injections of a mixture of Demerol and Phenergan for pain. These injections were to be given "as needed," "but no sooner than every four hours." (Testimony of Nurse Pierce.) On January 18, Holman's hospital chart (Joint Exhibit I) indicates that he received these IM injections at 8:20 a.m., 12:20 p.m., 5:30 p.m. and 9:50 p.m. This litigation centers around the 5:30 p.m. injection.

Holman testified that he called for a pain shot because of back pain. The nurse gave the injection in Holman's right buttock, the same place as other shots that had been given to him. The difference with this shot, however, is that Holman said that this injection caused a sharp pain, whereas previous ones did not.

Holman alleges that this particular injection was improperly given, and that the injection caused his subsequent injury. This injury was manifested in a lesion or abscess on Holman's right buttock. There is no dispute that this injury was first noted on Holman's chart sometime on January 18. The wound was such that a surgical operation, known as an Incision and Drainage ("I and C"), had to be performed on the affected area before Holman could be released on February 5. (The back operation was performed on January 19.) On February 10 he was readmitted, due to the pain associated with this lesion. Another I & C was performed on February 10 and a procedure known as a "Z-plasty" was performed on February 25. The Z-plasty was performed in order to seal the wound. He was released from this hospital stay on February 28. Holman contends that the injury is still quite painful.

Holman filed suit against Grandview Hospital and sought recovery for the negligence of Grandview's employees, in particular, the nurses who attended Holman. Mrs. Holman sought damages for loss of consortium.

The case was tried to a jury, which returned a verdict for the Holmans. Grandview Hospital asserts seven assignments of error. Additional facts will be discussed as those facts relate to the resolution of the assignments of error. These assignments of error are as follows:

Assignment of Error No. One:
"Where plaintiffs assert a medical claim against a hospital only, pursuant to Ohio Revised Code Section 2305.11 and do not assert a claim of negligence against nurse defendants individually and as parties defendant, the controlling statute of limitations is one year as provided in O.R.C. Section 2305.11(A) and it is error to overrule defendant hospital's motion to dismiss and permit the case to proceed to verdict and judgment against the hospital only. The defndant [sic] Grandview Hospital is entitled to judgment as a matter of law. It is error to treat the plaintiffs' medical claims against the hospital as negligence claims against unnamed nurses."

Assignment of Error No. Two:
"Prejudicial error was committed

by the trial court upon permitting plaintiffs' medical experts to testify to opinions based upon assumed facts neither perceived by the experts nor admitted in evidence at the time of trial in violation of Evidence Rule 703 and the law of Ohio."

Assignment of Error No. Three:
"Prejudicial error was committed by the trial court upon excluding from the evidence [the] collateral source payment of all of plaintiff Holman's medical and hospital expense[s] by the Bureau of Workers' Compensation. The evidence of such payment was proffered by the defendant hospital and excluded by the trial court in violation of Ohio Revised Code Section 2305.11(D), and Ohio Revised Code Section 2305.27."

Assignment of Error No. Four:
"Prejudicial error was committed by the trial court upon instructing the jury upon future damages as there was no competent probative medical evidence or expert testimony that the conditions complained of were likely to continue in the future and require future care and treatment with the result the verdict in the sum of $100,800.00 was excessive. An exception was taken by defendant to this instruction."

Assignment of Error No. Five:
"Prejudicial error was committed by the trial court upon excluding from the evidence defendant's Exhibits O and Q, letter reports from physicians to the Bureau of Workers' Compensation describing Holman's physical and mental condition immediately before the incident complained of where such letter reports were admissible [sic] under Evidence Rule 809(4) and were further admissible [sic] to impeach the credibility of plaintiff who in his testimony had described his physical and mental condition in contradiction to the conditions described in these reports."

Assignment of Error No. Six:
"The trial court erred to the prejudice of defendant upon permitting Clarence Cotterman, M.D. to testify as an expert witness when he lacked the qualifications necessary and mandated by Evidence Rule 601(D)."

Assignment of Error No. Seven:
"The verdict in the sum of $100,800.00 and the judgment entered for $100,000.00 is [sic] clearly excessive upon the record before this court."

The plaintiffs' theory of the case is that the necrotic abscess was caused by negligent introduction of the Demerol-Phenergan mixture into an arterial vessel. There is no dispute as to the fact that Phenergan is designed to be given only intra-muscularly, and that tissue damage would result from intra-venous or intra-arterial introduction into the body. The plaintiff contends that the nurse who gave the 5:30 p.m. injection, Linda Mongold, negligently caused the Phenergan to enter Holman's bloodstream. Plaintiffs contend that Mongold failed to aspirate the syringe, and that this failure caused her to make the mistake which led to Holman's injury. Aspiration is the process whereby the person giving the injection draws back on the plunger of the syringe before injecting the medicine. This creates suction in the syringe, and if the needle is in a blood vessel, blood will appear in the syringe. If blood does appear, the needle is withdrawn, no medicine is injected, and the shot is attempted to be given somewhere else. Holman contends that Mongold negligently failed to aspirate the syringe, and that this failure resulted in her injecting the Phenergan into an arterial vessel, causing Holman's injury.

The defendant's first, third, and sixth assignments of error are interrelated, and will be discussed first. The defendant's argument is that this case

154

is a medical malpractice case and, as such, is governed by the one-year statute of limitations for bringing a malpractice action, as contained in R.C. 2305.11(A). We must reject this argument.

The Ohio Supreme Court, in *Lombard* v. *Good Samaritan Med. Ctr.* (1982), 69 Ohio St. 2d 471, 23 O.O. 3d 410, 433 N.E. 2d 162, syllabus, ruled that the one-year statute of limitations of R.C. 2305.11(A) does not apply to hospital employees (nurses and laboratory technicians) whose conduct does not fall within the common-law definition of "malpractice." In *Hocking Conservancy Dist.* v. *Dodson-Lindblom Assoc.* (1980), 62 Ohio St. 2d 195, 197, 16 O.O. 3d 217, 218, 404 N.E. 2d 164, 166, the court indicated that the " '* * * common meaning and legal definition of the term, "malpractice," [is] * * * limited to the professional misconduct of members of the medical profession and attorneys. * * *' "

We agree with the plaintiffs that this case is properly characterized as a negligence action, and that the two-year statute of limitations applies to this case. " '* * * [T]he hospital, on the basis of respondeat superior, is in no better position than that of its agent [nurse]. Therefore, * * * the * * * hospital is not afforded the protection of the one-year statute of limitations for malpractice actions as contained in R.C. 2305.11. * * * [T]he two-year statute of limitations for bodily injury actions (R.C. 2305.10) is applicable to an action against the hospital-employer as it would be to an action against the nurse-employee. * * *" *Neilsen* v. *Barberton Citizens Hosp.* (1982), 4 Ohio App. 3d 18, 20, 4 OBR 39, 41, 446 N.E. 2d 209, 211. It is of no consequence that the nurse herself, in our case, was not joined as a defendant. The Holmans' suit was timely. The first assignment is hereby overruled.

The third assignment contends that evidence of collateral source payments was admissible under R.C. 2305.27. The defendant concedes that this statute only applies to medical malpractice claims, and that R.C. 2305.27 does not apply to negligence actions. As this case is a negligence case, and not a malpractice case, evidence of collateral source payments by the Bureau of Workers' Compensation was not admissible. The third assignment is overruled.

The sixth assignment attacks the competency of one of the plaintiffs' witnesses, Dr. Clarence Cotterman. The argument is based on Evid. R. 601(D) which provides, *inter alia*, that a person giving expert testimony in any claim asserted against a hospital arising out of the diagnosis, care or treatment of a person, must devote at least three-fourths of his professional time to clinical practice or to teaching. The argument is made that because Dr. Cotterman retired in 1985, he was no longer competent to testify.

The defendant concedes that if *Lombard* controls, Evid. R. 601(D) does not apply. As this case sounds in negligence, not malpractice, Evid. R. 601(D) is not applicable. The sixth assignment is hereby overruled.

The defendant's second assignment of error attacks the legal sufficiency of opinions rendered by plaintiffs' medical experts, Drs. Cotterman and Barnes. This attack is based on Evid. R. 703 which provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

The disputed testimony concerns the experts' opinions as to the cause of Holman's injury, the abscess. Specifically, the controversy revolves around the question of whether the nurse who gave Holman the 5:30 p.m. injection

aspirated the needle. The defendant argues that there is no evidence that Nurse Mongold failed to aspirate the needle, the deviation that constitutes the negligence.

Defendant's contention is that Drs. Cotterman and Barnes assumed certain facts not in evidence, specifically: that Holman was injected in the gluteus maximus, that Nurse Mongold failed to aspirate the needle, and that the injection was inter-arterial. Further, the hospital claims the opinions required an inference upon an inference.

Dr. Cotterman testified that he examined Holman in December 1984. Cotterman testified that Holman told him that the abscess developed at the position of the injection he received on January 18, 1983. Cotterman testified that the standard of care, generally, for giving IM injections was to insert the syringe, then aspirate before injecting. Cotterman explained what aspiration was and indicated that if blood is drawn into the syringe, the shot must be given somewhere else. After a defense objection was sustained to a question regarding whether the shot was defectively administered, Cotterman stated that, in general, while Demerol is not harmful if injected into an artery, Phenergan does cause damage to the artery. He stated that the artery closes off, causing the blood supply to cease, which results in tissue death. There is no dispute as to Phenergan's effect on an artery. The court then allowed Cotterman to answer the following general question:

"Q: Well, Doctor, if in the administration of Demerol and Phenergan it should happen that either aspiration, that aspiration is not done and the injection is given, is it then possible to inject the medication into an artery?

"A: It is possible it can be injected into an artery."

Plaintiffs' counsel then made several unsuccessful attempts to elicit Cotterman's opinion on the cause of injury. The court finally allowed, over objection, the following questions and responses:

"Q [by plaintiffs' counsel]: Dr. Cotterman, based upon your review of the records, based upon your history and physical, have you formed an opinion to a reasonable degree of medical certainty as to whether there is any other way Mr. Holman's injury could have occurred other than [through] defective administration of the Demerol and Phenergan?

"MR. MENZ [defense counsel]: Objection, and move to strike.

"THE COURT: I'm going to let him answer that.

"Q: Have you formed the opinion, Doctor?

"A: Yes, sir.

"THE WITNESS: My opinion is that there is no other way that the injury could have occurred, to my knowledge."

Plaintiffs' counsel then tried unsuccessfully to ask Cotterman whether he had an opinion as to whether the injection failed to conform to the standard of care.

However, the court did finally allow the following:

"Q: Have you formed an opinion to a reasonable degree of medical certainty as to whether Mr. Holman's present condition as regards the injury in his right buttock and the symptoms you've described as relates to that, and that only, have you formed such an opinion as to whether that was the direct result of the injection that he was given?

"* * *

"THE WITNESS: My opinion is that the existing condition with the hip is the direct result of an improper injection.

"MR. MENZ: Move to strike.

"THE COURT: Overruled."

The record reflects Dr. Cotterman's direct testimony, rather than assumption, that the gluteus maximus was injected. However, the situs of the injection does not appear to be as critical to Holman's case as the "assumption" that the injection was intra-arterial. It was the injection of the Phenergan into the bloodstream that caused the injury. As we view the record, the intra-arterial injection was not an assumed fact, but a reasonably inferred fact, based on the undisputed testimony that Phenergan causes tissue damage if injected into an artery, that the abscess occurred after the shot was given, and that the record of Holman's physical examination upon admission on January 16 showed no sign of abscess or lesion in the area which became inflamed after the January 18 injection.

From the fact that there was an intra-arterial injection, the doctors could reasonably infer a failure to aspirate, i.e., negligence.

We recognize that this evidence may run afoul of the rule against inferences upon inferences. However, we note that this particular objection was not made in the trial court at the end of the Holmans' case or at the close of all the evidence, at which times Grandview Hospital moved for a directed verdict. Hence, this argument is not available on appeal.

Considering not only this, but also the discretion which must be accorded trial judges on close evidentiary calls, we conclude that there was no error in admitting these opinions. See, also, the recent concern expressed about overly rigid application of the rule against stacking inferences in Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees (1986), 28 Ohio St. 3d 13, 28 OBR 77, 502 N.E. 2d 204. The second assignment is overruled.

The fourth assignment of error is that it was error for the trial court to instruct the jury as to future damages, as there was no evidence that Holman would need future care. This assignment is not well-taken. The court's instruction to the jury was as follows:

"Regarding further damages or permanent injury, you are not to speculate. The law deals in probabilities and not mere possibilities. You may consider only those things that you find from the evidence that are reasonably certain to continue."

The above instruction certainly protected the defendant from jury speculation. More importantly, as there were no interrogatories given to the jury, there is no way of knowing whether the jury awarded any damages for future medical expenses. There was evidence from which the jury could conclude Holman would suffer future pain and suffering. There is nothing to suggest that the jury verdict was the result of passion or prejudice, or that it was clearly excessive. On the contrary, there was evidence that the injury had a continuing effect on Holman's quality of life. Dr. Cotterman testified that the pain from the hip injury is different from the pain from the back injury. Dr. Barnes also testified that Holman told him of the pain. Holman testified that the pain from the hip was like a "butcher knife" being put into the scar. Holman testified that he was able to do some things, such as fishing or hunting, despite the back problems because he knew what his limitations were. The hip injury, however, was such that the pain would flare up unexpectedly. He also testified that the pain was such that it impaired sexual relations with his wife. He also testified that he has to be careful how he stands or sits. Holman also indicated that he has a continuing prescription for pain medication, Vicodin. Bonnie Holman also testified that her husband was

unable to do certain things because of the hip injury. She testified that her husband's "nerves seemed worse" concerning the children, and that the pain affected their marital relations.

There was, therefore, evidence presented from which the jury could reasonably have inferred that Holman's injury would continue to cause pain.

The fourth assignment is overruled.

The defendant's fifth assignment of error attacks the exclusion of two of defendant's exhibits. These exhibits consisted of letters, dated late in 1982, from two physicians who had treated Holman. They were sent to the attorney who had represented Holman in his claim for workers' compensation benefits because of his back injury.

At trial, defendant indicated that these letters were to be used for the sole purpose of impeaching Holman's credibility. The letter from Dr. Hubach purportedly contradicted Holman's testimony that he could engage in activities such as fishing and hunting. The letter from Dr. Greenfield, a psychiatrist, purportedly contradicted Holman's testimony as to his physical and mental condition, Greenfield's letter indicating that Holman was suffering from a severe depression brought on by his chronic back pain. Both letters contained the physicians' reports indicating what Holman had told them. The trial judge excluded the letters as hearsay.

On appeal, defendant argues that the letters were admissible to impeach Holman, and that they were also admissible under Evid. R. 803(4) which states:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(4) *Statements for purposes of medical diagnosis or treatment.*

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.''

The defendant cannot now raise the new issue of the applicability of Evid. R. 803(4). Issues not raised and tried in the trial court cannot be raised for the first time on appeal. *Republic Steel Corp.* v. *Bd. of Revision of Cuyahoga Cty.* (1963), 175 Ohio St. 179, 23 O.O. 2d 462, 192 N.E. 2d 47.

We also conclude that the letters were not properly admissible for purposes of impeachment. The letters contained the physicians' reports of what they were told by Holman. The letters also contained the doctors' diagnoses and recommendations based on their own examinations, as well as Holman's statements. The doctors' statements of diagnosis and recommendation were clearly hearsay.

The difficulty with admitting these letters as to Holman's statements is that they implicate "second level" hearsay. Use of these letters presupposes that Holman did, in fact, make the statements that the physicians say he did. In other words, the letters were sought to be admitted, in part, for the truth of the matter asserted. *i.e.,* that Holman made the statements to the doctors.

The difficulty, of course, is that neither physician was under oath nor subject to cross-examination. The trial judge was correct in refusing to admit the letters. The fifth assignment is overruled.

The defendant's seventh assignment of error essentially attacks the verdict as being excessive, based on the evidence. This assignment is not well-taken.

The defendant's argument in this

assignment appears to be that Holman's preexisting back condition was so severe that the hip injury did not increase Holman's damages. In other words, because he was already permanently disabled, the defendant's negligence could not have caused any additional problems.

While it is true that there was evidence that Holman's back injuries were severe, there was also evidence that the hip injury aggravated Holman's problems. For example, there was testimony regarding certain activities which Holman could no longer engage in solely because of the hip injury.

On the state of the evidence before us, we cannot say that the jury award was excessive. There was no indication that the jury acted out of passion or prejudice. The defendant's citation to our case of *Combs* v. *Grandview Hosp.* (Jan. 23, 1981), Montgomery App. No. 6891, unreported, is misplaced. In that case we held that a $40,000 verdict was excessive and that the evidence only supported an award of $20,000. That decision, however, turned on the particular facts in that case. In *Combs*, there was evidence that the plaintiff's numerous preexisting physical problems had left him a housebound invalid. In any event, the evidence showed that the defendant's negligence did not significantly increase the plaintiff's difficulties, so as to warrant the jury award. We then entered a $20,000 remittitur.

The *Combs* decision is inapplicable in this case. The evidence in this case shows that Holman is now unable to participate in activities as a direct result of the hip injury. While his quality of life may not have been the best before the injury to the hip area, the injury significantly worsened his condition. Indeed, given his own testimony that he knew what limitations his back injury put on his life, the further restrictions caused by the defendant's alleged negligence are all the more serious. The seventh assignment of error is overruled.

## Case No. CA 10147

In case No. CA 10147, the Holmans appeal the trial court's denial of their motion seeking prejudgment interest. The Holmans' assignment of error is as follows:

"The trial court erred in grounding its denial of appellants' motion for prejudgment interest upon the uncontroverted sole finding of fact that: 'Defendant did not attempt or unnecessarily delay any of the proceedings,' and the sole correct but inapplicable conclusion of law that: 'The standard for a "good faith effort to settle" does not require [the] parties in all cases to make monetary settlement offers.' "

Both the Holmans and Grandview Hospital agree that this question is controlled by *Kalain* v. *Smith* (1986), 25 Ohio St. 3d 157, 25 OBR 201, 495 N.E. 2d 572. The syllabus of that case states:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."

The Holmans do not contend that the defendant failed to cooperate with discovery, or unnecessarily delayed the proceedings. Rather, they contend that the hospital did not rationally evaluate its liability exposure, and respond to good faith offers to settle. According

to the Holmans, Grandview Hospital refused a settlement offer of $60,000.

The Holmans base their claim on the fact that the jury was unanimous in its verdict of $100,800. They also point out that one of the defendant's own experts, Dr. Spriggs, indicated that the abscess could have been caused by the injection. Working from this premise, the Holmans argue that Grandview Hospital could not have had an objectively reasonable belief that it was not liable. Therefore, the hospital's failure to settle, or to make a settlement offer, was not done in good faith. Thus, prejudgment interest was appropriate.

This argument is not well-taken. Dr. Spriggs' testimony was to the effect that the abscess could have been caused by the injection *despite* absolutely correct technique, due to a phenomenon known as "micro-bleeding."

The defendant's other expert, Dr. Brandabur, was of the opinion that the injury to Holman was a pressure sore or bedsore. Dr. Brandabur stated that this was the result of Holman's inactivity, frequent hospitalizations with pain medication, and Holman's habit of lying in a fetal position because of his back pain. Dr. Brandabur was extremely well-qualified to offer his opinion, being the Director of Laboratories and Director of the Department of Pathology at Hamilton Mercy and Fairfield Mercy Hospitals. Dr. Brandabur was also the Chief Deputy Coroner of Butler County. While the jury chose not to accept Dr. Brandabur's opinion as to what caused the injury, we cannot say that the defendant was not being "objectively reasonable" when it took the position that there was no liability in reliance on Brandabur's opinion. Under *Kalain*, therefore, Grandview was under no obligation to make a settlement offer. The Holmans' assignment of error is overruled.

The judgment against Grandview Hospital in case No. CA 9961 will be affirmed.

The judgment in case No. CA 10147, denying prejudgment interest, will also be affirmed.

*Judgments affirmed.*

WILSON and FAIN, JJ., concur.