Florence SIME and Corbin L. Sime,
Plaintiffs and Appellants,

v.

TVENGE ASSOCIATES ARCHITECTS
& PLANNERS, P.C.; Schmit, Smith &
Rush, Inc., Defendants and Appellees,

Munro Contractors, Inc. and Custom
Aire, Inc., Defendants.

Civ. No. 920009.

Supreme Court of North Dakota.

June 25, 1992.

Butz & Kraft, P.C., Rugby, for plaintiffs and appellants, argued by Carlan J. Kraft, Rugby.

Tschider & Richau, Bismarck, for defendant and appellee Tvenge Associates Architects & Planners, P.C., argued by Gregory W. Tschider, Jr., Bismarck.

Pringle & Herigstad, P.C., Minot, for defendant and appellee Schmit, Smith & Rush, argued by Thomas A. Wentz, Jr., Minot, third year law student, appearance by Lee J. Balerud.

ERICKSTAD, Chief Justice.

Florence and Corbin L. Sime appeal from the order of the District Court for Rolette County, granting the defendants' motion for summary judgment of dismissal. We affirm.

Florence and Corbin Sime filed this action on January 29, 1990, alleging that the defendants Tvenge Associates Architects & Planners, P.C., and Schmit, Smith & Rush Inc. (SSR), had negligently designed a ventilation system and planned for its location in the San Haven State Institution, causing outside vehicle exhaust fumes from an unloading ramp to invade the building, resulting in injuries to Florence from carbon monoxide inhalation. The complaint also alleged that the defendants Munro Contractors, Inc., and Custom Aire, Inc., had negligently constructed and installed the ventilation system resulting in the above alleged problems. In an answer dated February 9, 1990, Tvenge generally denied any liability and additionally asserted as a crossclaim that, in the event Tvenge was held liable, SSR should have to indemnify Tvenge for any defect in the mechanical system as Tvenge had contracted with SSR to design the mechanical systems for the building. In an answer dated February 28, 1990, SSR generally denied liability, asserted various affirmative defenses including that the applicable statute of limitations had run, generally denied Tvenge's crossclaim, and asserted as a crossclaim that Tvenge should indemnify SSR for any design defect. On May 22, 1991, an amended complaint was filed asserting that Florence Simes had not only been exposed to the vehicle exhaust fumes in February or March of 1984, but was additionally exposed thereafter through May of 1985. On September 26, 1991, the trial court granted the defendant Tvenge's motion to amend Tvenge's answer to include the affirmative defense that the applicable statute of limitations had run. Subsequently, SSR moved for summary judgment of dismissal on the grounds that the Simes' action was barred by the two-year statute of limitations for professional malpractice. Tvenge also moved for summary judgment of dismissal on the grounds that the Simes' action was barred by the applicable statute of limitations for professional malpractice. The Simes thereafter moved the trial court to allow them to amend their complaint to add claims for products liability based on theories of implied warranty and strict liability. On November 18, 1991, the trial court denied the Simes' motion to amend their complaint to add products liability claims based on implied warranty and strict liability, and granted the defendants' motions for summary judgment of dismissal, and in all things dismissed the action. This appeal followed.

■ We must first determine whether or not this case is properly before us. Although, generally speaking, an order granting summary judgment, or an order of dismissal, is not appealable under section 28–27–02, N.D.C.C., *Simpler v. Lowrey*, 316 N.W.2d 330, 333 (N.D.1982), the order in this case was obviously intended to be final, *Cook v. Cook*, 364 N.W.2d 74, 75 n. 1 (N.D.1985), and as it granted summary judgment dismissing all of the Simes' claims against Tvenge and SSR, it is appealable under section 28–27–02, N.D.C.C. *Peterson v. Zerr*, 443 N.W.2d 293, 296 (N.D.1989).[1]

■ Having found the trial court's order to be reviewable under section 28–27–02, we must additionally inquire whether or not Rule 54(b), N.D.R.Civ.P., must be complied with. Generally, where the trial court has made a determination on less than all of the claims in an action, this Court is without appellate jurisdiction. *Id.* In this case, the defendants, Munro Contractors, Inc., and Custom Aire, Inc., were apparently never formally dismissed from the action. However, SSR in its brief asserts that these defendants settled with the Simes and are no longer parties to this action. The record before us implicitly supports this. Therefore, we conclude that this appeal is properly before us.

■ Initially, we note the standards for granting motions for summary judgment. Under Rule 56, N.D.R.Civ.P., summary judgment is appropriate when, after viewing the evidence in a light most favorable to the party opposing the motion, there are no genuine issues of material fact or conflicting inferences which can reasonably be drawn from undisputed facts, or when the only issues to be resolved are questions of law. *Biesterfeld v. Asbestos Corporation of America*, 467 N.W.2d 730, 735 (N.D. 1991). Additionally, although the initial burden of establishing the absence of any genuine issues of material fact lies with the summary judgment movant, *Binstock v. Tschider*, 374 N.W.2d 81, 83 (N.D.1985), a party opposing the motion "may not rest upon the mere allegations or denials" contained in his or her pleadings. *See* Rule 56(e), N.D.R.Civ.P. Rather, "[a] party resisting a motion for summary judgment has the responsibility of presenting competent admissible evidence by affidavit or other comparable means." *First National Bank of Hettinger v. Clark*, 332 N.W.2d 264, 267 (N.D.1983).[2]

On appeal, the Simes first assert that the two-year statute of limitations for malpractice actions contained in section 28–01–18(3)[3], N.D.C.C., should not apply to architects and engineers. The Simes argue that the test for whether or not the two-year statute of limitations for professional malpractice should apply, should turn on the work done and not the person's educational background.

In *Johnson v. Haugland* we defined malpractice as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result that injury, loss, or damage [occurs] to the recipient of those services or to those entitled to rely upon them." *Johnson v. Haug-*

---

1. Our past decisions on whether or not an order is appealable under section 28–27–02, N.D.C.C., are reflective of two separate concerns. First, we will not entertain appeals from orders from which we cannot affirmatively establish were meant to be, in all aspects, final. Second, in construing section 28–27–02, N.D.C.C., we are always mindful of the longstanding policy against "piecemeal appeals."

2. Although, the "malpractice plaintiff's knowledge is ordinarily a fact question which is inappropriate for summary judgment, the issue becomes one of law if the evidence is such that reasonable minds could draw but one conclu-

sion." *Wheeler v. Schmid Laboratories, Inc.,* 451 N.W.2d 133, 137 (N.D.1990) (citations omitted). In this case, it is apparently undisputed that the Simes' cause of action accrued more than two years prior to instituting this action.

3. Section 28–01–18, N.D.C.C., sets forth in part:

    "*Actions having two-year limitations.* The following actions must be commenced within two years after the claim for relief has accrued:

    *     *     *     *     *     *

    3. An action for the recovery of damages resulting from malpractice...."

*land,* 303 N.W.2d 533, 538 (N.D.1981). Thus, in *Jilek v. Berger Electric, Inc.,* 441 N.W.2d 660, 661 (N.D.1989), we concluded that "[s]imply stated, malpractice means professional negligence." [4]

In delineating between professions and nonprofessional vocations, we have noted that "as a general rule, a profession is an occupation that requires a college degree in the specific field." *Id.* at 663. In this case, there is apparently no dispute that both defendants hold themselves out as providing services for which a college degree is required. *See generally* chapters 43–03 and 43–19.1, N.D.C.C. In his affidavit in support of summary judgment, Warren Tvenge details the extensive education needed to become a licensed architect. Furthermore, we have previously, at least implicitly, recognized that engineering is professional in nature. *See Three Affiliated Tribes v. Wold Engineering,* 419 N.W.2d 920 (N.D.1988).[5]

■ Although, as the Simes apparently assert, the nature of the work done by architects and engineers may be markedly different from that of lawyers or doctors, we conclude that engineers and architects are professionals for purposes of the two-year statute of limitations for malpractice actions.

Having concluded that architects and engineers are professionals for purposes of section 28–01–18(3), N.D.C.C., our next inquiry focuses on whether or not the specific complained of act or omission was the failure to conform to professional standards of skill and learning. In other words, the question is whether the complained of act or omission is a matter of malpractice or is simply ordinary negligence.

" 'The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of ... science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience.' " *Berger v. State,* 171 A.D.2d 713, 567 N.Y.S.2d 275, 278 (1991) (quoting *Kerker v. Hurwitz,* 163 A.D.2d 859, 558 N.Y.S.2d 388 (1990)).

■ Although the general statute of limitations applies to actions based on ordinary negligence regardless of whether or not the defendant is a professional, one cannot escape the confines of the statute of limitations for malpractice actions by simply couching the complaint in terms of ordinary negligence. *Johnson v. Haugland,* 303 N.W.2d at 538. It is "the actual nature of the action" or the actual "nature of the subject matter" which is determinative. *Id.*

■ However, the Simes apparently do not dispute the fact that their injuries were caused by the defendants' alleged failure to conform to the professional standards of skill and learning of architects and engineers. Rather, they assert that the action is not one of "malpractice," within the meaning of section 28–01–18(3), N.D.C.C., because there was never a professional relationship between the defen-

4. We recognize that some authorities consider malpractice to be a special species of professional negligence where the parties involved have been in a professional relationship. *See Cubito v. Kreisberg,* 69 A.D.2d 738, 419 N.Y.S.2d 578 (1979); *See also Architectural Malpractice: Toward an Equitable Rule for Determining When the Statute of Limitations Begins to Run,* 16 Fordham Urb.L.J. 509 (1988).

Also, we note that some jurisdictions explicitly require direct privity for the malpractice statute of limitations to apply. *See* Fla.Stat. § 95.-11(4)(a) (1991); *Baskerville–Donovan v. Pensacola Exec.,* 581 So.2d 1301 (Fla.1991).

5. Other jurisdictions have similarly concluded that engineers and architects are professionals for purposes of statutes of limitations for malpractice actions. *See e.g. Board of Regents v. Wilscam Mullins Birge, Inc.,* 433 N.W.2d 478 (Neb.1988) (holding that architects and engineers were professionals for purposes of two-year statute of limitations for professional negligence actions); *Vandevelde v. Falls City Builders, Inc.,* 744 S.W.2d 432 (Ky.Ct.App.1988) (recognizing that a civil engineer was a professional for purposes of malpractice statute of limitations); *but see Hocking Conservancy Dist. v. Dodson–Lindblom Assocs., Inc.,* 62 Ohio St.2d 195, 404 N.E.2d 164 (1980) (holding that engineering was not one of the traditional professions at common law and, accordingly, not subject to the malpractice statute of limitations).

dants and themselves. In support of their position, the Simes cite such cases as: *Cubito v. Kreisberg*, 69 A.D.2d 738, 419 N.Y.S.2d 578, 580 (1979) ("malpractice in the statutory sense describes the negligence of a professional toward the person for whom he rendered a service, and that an action for malpractice springs from the correlative rights and duties assumed by the parties through the relationship. On the other hand, the wrongful conduct of the professional in rendering services to his client resulting in injury to a party outside the relationship is simple negligence."); *Amer v. Akron City Hospital*, 47 Ohio St.2d 85, 351 N.E.2d 479, 482 (1976) (" '[t]he right of action of a husband for damages for medical expenses, loss of consortium and loss of services of his wife injured by the malpractice of a physician is not one for malpractice' "), quoting *Corpman v. Boyer*, 171 Ohio St. 233, 169 N.E.2d 14 (1960).[6]

However, notwithstanding the above noted authority, we do not believe we can or should construe the term malpractice, within our statute, as encompassing only those actions where there is privity or near privity.

We have previously said that one who undertakes to design and construct a structure has a duty to exercise ordinary care and skill to protect any who foreseeably, or with reasonable anticipation, may be injured by the failure to do so. *See, Layman v. Braunschweigische Maschinenbauanstalt, Inc.*, 343 N.W.2d 334, 341 (N.D.1983); *Jones v. Boeing Co.*, 153 N.W.2d 897, 904 (N.D.1967). This duty arises independent of any contractual obligations. *Layman*, 343 N.W.2d at 341.[7]

In deciding whether or not one has breached this independent duty to third persons arising from his or her undertaking to act as a professional, one cannot avoid inquiring whether or not the person acted in a manner consistent with professional standards of skill and learning. In highly complicated and technical areas, even gross negligence may not be discernible without setting forth the professional standards of skill and learning. In this sense, the inquiry remains whether or not the defendant committed "professional negligence."

■ In *Johnson v. Haugland* we stressed that "the term 'malpractice' in Section 28–01–18(3), N.D.C.C., refers to the nature of the subject matter of the action and not to the form of remedial procedure, whether it be in tort or contract." 303 N.W.2d at 538. Similarly, we conclude that the term malpractice refers to those actions where the fact-finder must evaluate the reasonableness of the defendant's conduct in light of the special knowledge and skill he or she is presumed to have as a member of the profession, regardless of the relationship between the parties.

■ We also conclude that the two-year statute of limitations for malpractice actions applies to loss of consortium claims arising out of alleged professional negligence. Although a claim for loss of consortium may well be separate and distinct,[8] it, nevertheless, derives from the other spouse's injury. As the Montana Supreme Court noted, "it would be illogical and ineq-

---

6. Other cases which the Simes cite for the proposition that a claim can be for "malpractice" only where the parties had been in a professional relationship include, *Rogers v. Horvath*, 65 Mich.App. 644, 237 N.W.2d 595 (1975); *Pankow v. Sables*, 79 Mich.App. 326, 261 N.W.2d 311 (1977); *Michigan Mut. Ins. Co. v. Shaheen*, 101 Mich.App. 761, 300 N.W.2d 599 (1980); *MacDonald v. Barbarotto*, 161 Mich.App. 542, 411 N.W.2d 747 (1987); *Sexton v. Petz*, 170 Mich. App. 561, 428 N.W.2d 715 (1988); *Chiesa v. Rowe*, 486 F.Supp. 236 (W.D.Mich.1980); *Newsom v. Republic Financial Services, Inc.*, 130 Misc.2d 780, 497 N.Y.S.2d 830 (1985); *Henkemeyer v. Boxall*, 465 N.W.2d 437 (Minn.Ct.App.

1991); *Neilsen v. Barberton Citizens Hosp.*, 4 Ohio App.3d 18, 446 N.E.2d 209 (1982).

7. The modern approach to discerning whether or not a duty exists generally rests on questions of foreseeability of harm and not privity of contract. *See* 65 C.J.S. *Negligence* § 4(11) (1966); *see also* W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 93 (5th ed. 1984).

8. *See Milde v. Leigh*, 28 N.W.2d 530 (N.D.1947); *Reichelt v. Johns–Manville Corp.*, 107 Wash.2d 761, 733 P.2d 530 (1987); 173 A.L.R. 754 et seq. (1948).

uitable to subject the loss of consortium claim to a different time limit when both claims arise out of the same conduct." *Priest v. Taylor*, 227 Mont. 370, 740 P.2d 648, 653–654 (1987).

Also, we note that Corbin Sime has not asserted that his claim for loss of consortium accrued at any time different from that of his wife's claim for personal injuries.

The Simes next assert that they should have been allowed to amend their complaint to add claims based on strict products liability.[9] Under a products liability theory, the Simes assert that their action would be subject to the six-year statute of limitations set forth in section 28–01–16, N.D.C.C.

However, as the Simes candidly admit, strict products liability theories of recovery are generally unavailable against those who only render professional services. *See* 63 Am.Jur.2d *Products Liability*, § 218 (1984); W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 104, at 719–720 (5th ed. 1984). The Simes, nevertheless, assert that the design of a building and ventilation system, while perhaps the rendering of services, additionally places a product on the market for which strict liability should apply.

Faced with a similar argument, the Missouri Court of Appeals observed:

" '[T]he reasons for the development of ... strict liability in tort ... [were] the lack of privity between the manufacturer and the buyer, the difficulty of proving negligence against a distant manufacturer using mass production techniques, and the better ability of the mass manufacturer to spread the economic risks among

its consumers.... These considerations are not applicable in a contract for professional services.' "

*Chubb Group of Ins. v. C.F. Murphy & Assoc.*, 656 S.W.2d 766, 779 (Mo.Ct.App. 1983), quoting *State, etc. v. Gathman-Matotan, etc.*, 98 N.M. 790, 653 P.2d 166, 170 (Ct.App.1982).

The Minnesota Supreme Court noted:

"[W]hile it is undoubtedly fair to impose strict liability on manufacturers who have ample opportunity to test their products for defects before marketing them, the same cannot be said of architects. Normally, an architect has but a single chance to create a design for a client which will produce a defect-free structure. Accordingly, we do not think it is just that architects should be forced to bear the same burden of liability for their products as that which has been imposed on manufacturers generally."

*City of Mounds View v. Walijarvi*, 263 N.W.2d 420, 425 (Minn.1978). We also have previously noted the above distinction between architects or engineers and manufacturers. *See Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733, 738 (N.D. 1988).

■ In this case, the Simes did not assert and have not brought forth any evidence in opposition to the defendants' motions for summary judgment which suggests that the architectural design or ventilation system were in any way standardized or mass marketed. There is nothing before us which suggests that the architectural design or ventilation system are anything more than unique to a particular setting.

---

9. The Simes sought to advance their claim of products liability under theories of implied warranty and strict liability in tort. Although the parties to an action based on implied warranty need not be in direct contractual privity, *see Lang v. General Motors Corporation*, 136 N.W.2d 805 (N.D.1965), any implied warranty generally follows a sale or consumer purchase or arises through some economic relationship. *See generally Hagert v. Hatton Commodities, Inc.*, 350 N.W.2d 591 (N.D.1984); *Air Heaters, Inc. v. Johnson Electric, Inc.*, 258 N.W.2d 649 (N.D. 1977). In this case, the Simes were neither a

purchaser nor in the usual sense the consumer of San Haven building, nor were they a purchaser or consumer of the ventilation system. In essence, the Simes seek to add a claim to recover for personal injuries caused by an alleged product (a building and ventilation design), under the doctrine of strict liability in tort. *See generally Hagert*, 350 N.W.2d at 594 n. 5; W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 97, 98 (5th ed. 1984); Restatement (Second) of Torts, § 402A comment m (1965).

**612**

Accordingly, we conclude that the underlying policy reasons behind the imposition of strict products liability are simply not applicable to the facts of this case. Thus, the trial court did not commit error in denying the Simes' request to amend their complaint to add such a claim.

For the aforementioned reasons, we conclude that this action is solely one for malpractice, subject to the two-year statute of limitations contained in section 28–01–18(3), N.D.C.C. The order of the district court, granting the defendants' motions for summary judgment of dismissal, is therefore affirmed.

VANDE WALLE and LEVINE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

JOHNSON, J., concurs in the result.

VERNON R. PEDERSON, S.J., sitting in place of MESCHKE, J., disqualified.