Rose Cubito, Respondent, v Gerald Kreisberg, Individually
and Doing Business as Daroe Realty, et al., Respondents;
Gindele & Johnson, Appellant, et al., Defendants.

Second Department, August 13, 1979

APPEARANCES OF COUNSEL

*Davis & Davis (Andrew P. Davis* and *Richard T. Andrias* of counsel), for appellant.

*Harold M. Foster (William F. McNulty* and *Anthony J. McNulty* of counsel), for Gerald Kreisberg and another, respondents.

*Finkelstein, Mauriello, Kaplan & Levine, P. C. (Benjamin J. Fried* of counsel), for Rose Cubito, respondent.

**OPINION OF THE COURT**

HOPKINS, J. P.

The plaintiff, a tenant in an apartment house, fell in the laundry room on October 30, 1974. On October 6, 1977, she brought this action to recover damages for personal injuries based on the defendants' negligence. The complaint alleges that the defendant Gindele & Johnson was the architect which so negligently planned and designed the construction of the laundry room that water collected on the floor, causing the plaintiff's injuries.

Gindele & Johnson moved to dismiss the action on the ground that it was barred by the Statute of Limitations (CPLR 214, subd 6). The basis of its motion was that it had completed all its services on May 7, 1973, when the certificate of final inspection was sent to the owner, and that, consequently, more than four years had elapsed when the plaintiff's action was commenced.

Special Term denied the motion, holding that it would be unreasonable to apply the statute so as to extinguish a claim against the architect for its negligence prior to the time that the injury had been sustained or that an action could have been brought to recover damages for the injury *(Cubito v Kreisberg,* 94 Misc 2d 56).

We affirm. The Statute of Limitations applicable to the liability of an architect for injuries suffered by third parties due to his negligence runs from the date of the injury.

I

Since the Statute of Limitations is a defense in the nature of confession and avoidance, we need not treat the facts at length save as they are relevant to the question of law raised

by the defendant architect. We are told by the architect that it had been hired by the New York State Urban Development Corporation (UDC) to furnish services for a housing project known as the Lake Street Houses in Orange County. The project was owned by a partnership formed by the defendants Sprain Construction Company (Sprain) and Gerald Kreisberg (Kreisberg). The architect says that it had performed its work by completing plans for the project on November 26, 1969. The construction of the project was substantially completed by July 13, 1972, and a certificate of occupancy was issued on April 27, 1973. On May 3, 1973 the architect, jointly with UDC, certified to the owner that they found by inspection that the work under the construction contract had been fully performed; their certificate was sent to Sprain and Kreisberg on May 7, 1973.

The architect contends that since that date it has had no involvement with the project. It stresses, in particular, that it has had nothing to do with the maintenance and repair of the laundry room or its facilities. Hence, it argues that the three-year limitation prescribed for malpractice actions generally (as distinguished from medical malpractice) applies to the plaintiff's action (CPLR 214, subd 6). It urges that the date of completion of its work marks the time when the statute begins to run, and the plaintiff's action was brought well beyond the three-year period and is therefore barred (cf. *Sosnow v Paul,* 43 AD2d 978, affd 36 NY2d 780; *Matter of Paver & Wildfoerster [Catholic High School Assn.],* 38 NY2d 669; *Sears, Roebuck & Co. v Enco Assoc.,* 43 NY2d 389).

Moreover, the architect contends that Special Term erroneously based its decision on *MacPherson v Buick Motor Co.* (217 NY 382) and *Inman v Binghamton Housing Auth.* (3 NY2d 137). In neither of these cases, it says, was liability predicated on the rendition of professional services sanctioned, and public policy soundly differentiates between a manufacturer of a defective product and a purveyor of services, such as an architect.

II

Since the defendant architect largely rests its argument on the statute, we begin by an analysis of its provisions. The statute provides for time periods for the institution of suits linked to the character of the action. As malpractice essentially is a special form of negligent conduct, it is instructive to

note that the statute deals severally with types of actions grounded on negligence.

CPLR 214 (subd 5) provides that an action to recover damages for personal injuries,* including an action based on the negligence of the defendant (Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C214:5, p 429) must be commenced within three years. CPLR 214 (subd 6) provides that an action to recover damages for malpractice, other than medical malpractice, similarly must be brought within three years. CPLR 214-a provides that an action for medical malpractice must be commenced within two years and six months. Thus, the statute formally treats malpractice actions differently from other actions based on negligence in limiting the time in which the action must be instituted. Even so, for our purposes in this appeal it is to be noted that the statute in dealing with an architect's malpractice makes no material difference from the conventional negligence action, since it prescribes the same three-year limitation.

Nevertheless, it is useful to recognize as an aid in analysis that malpractice, in its strict sense, means the negligence of a member of a profession in his relations with his client or patient. In this case the plaintiff is not, and never has been, in a professional relation with the architect. Though at times the term has been employed in a broad sense, particularly where disciplinary proceedings have been the subject of discussion (*Matter of Clark,* 184 NY 222; *Matter of Silkman,* 88 App Div 102, 104), we think that malpractice in the statutory sense describes the negligence of a professional toward the person for whom he rendered a service, and that an action for malpractice springs from the correlative rights and duties assumed by the parties through the relationship. On the other hand, the wrongful conduct of the professional in rendering services to his client resulting in injury to a party outside the relationship is simple negligence.

The importance of this distinction becomes evident in considering the measurement of time which the statute provides. CPLR 203 (subd a) states that the time within which an action must be commenced shall be computed from the time the cause of action accrued to the time the claim is interposed. The fulcrum of the statute is thus the meaning to be attached

---

* CPLR 214 (subd 5) excepts from its operation actions mentioned in CPLR 215, which are not based on the theory of negligence and therefore do not concern us.

to the term of "accrual of a cause of action"—a meaning which has been supplied by judicial gloss.

## III

Since the statute affords no definition, we must presume that the content of the meaning of an accrual of a cause of action has been left by the Legislature to judicial determination (see *City of New Bedford v Lloyd Inv. Assoc.,* 363 Mass 112; *Raymond v Lilly & Co.,* 117 NH 164). In *Schmidt v Merchants Desp. Transp. Co.* (270 NY 287, 300), a case involving a claim based on negligence, not malpractice, the Court of Appeals held that the accrual of the cause of action arose when the wrongful invasion of personal rights occurred by reason of conduct of the wrongdoer. That the injury suffered may not be perceived until much later was said to constitute no escape from the statute, though hardship may be the outcome, for "such occasional hardship is outweighed by the advantage of outlawing stale claims" *(Schmidt, supra,* p 302). There the plaintiff was barred by the statute, when he had inhaled dust while employed by the defendant and contracted lung disease as a result more than three years later. This rule in actions based on negligence still holds true *(Schwartz v Heyden Newport Chem. Corp.,* 12 NY2d 212, 216-217).

Where exceptions have been hewn from the rule, the cases in point involved a professional relationship between the parties, as, for example, a continuing service rendered by a member of a profession *(Borgia v City of New York,* 12 NY2d 151; *Siegel v Kranis,* 29 AD2d 477; *County of Broome v Vincent J. Smith, Inc.,* 78 Misc 2d 889), or an express promise to achieve a specific result *(Robins v Finestone,* 308 NY 543; *Boécher v Borth,* 51 AD2d 598), or in medical malpractice, where a foreign object is discovered at the site of an operation *(Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427), or a physician concealed his negligence *(Simcuski v Saeli,* 44 NY2d 442). In these exceptions the statute was construed to mark the beginning of the measurement from the later date.

Moreover, difficulties in applying the statute have arisen when causes of action, not sounding in negligence, but brought for breach of warranty, have been under consideration (see, e.g., *Mendel v Pittsburgh Plate Glass Co.,* 25 NY2d 340, overruled in *Victorson v Bock Laundry Mach. Co.,* 37 NY2d 395; *Martin v Dierck Equip. Co.,* 43 NY2d 583; *Dickey v Lockport Prestress,* 52 AD2d 1075; *Strenk v Rausch Equip.*

*Corp.,* 58 AD2d 986; *McCarthy v Bristol Labs., Div. of Bristol-Myers Co.,* 61 AD2d 196).

Finally, as a logical consequence of the distinction which our analysis found inherent in the statute between malpractice and simple negligence in the rendition of services by an architect, the recent decisions holding that a cause of action against an architect by his client arising out of faulty design or construction accrues on completion of construction *(Sosnow v Paul,* 43 AD2d 978, affd 36 NY2d 780, *supra; Matter of Paver & Wildfoerster [Catholic High School Assn.],* 38 NY2d 669, *supra; Sears, Roebuck & Co. v Enco Assoc.,* 43 NY2d 389, *supra)* cannot have any application here.

Here the plaintiff has no professional relationship with the defendant and is suing not on breach of warranty as a remote user but on a claim of simple negligence by an architect. Hence, the general rule that a cause of action for damages due to negligence accrues when the invasion of the plaintiff's personal rights occurred, i.e., when she fell as a result of the defendants' claimed negligence, should apply, as Special Term held (cf. *Durant v Grange Silo Co.,* 12 AD2d 694; *Gile v Sears, Roebuck & Co.,* 281 App Div 95), unless we are required by reasons of compelling public policy to find that the cause of action accrued when the architect prepared the plans and found the building to have been completed according to the plans.

## IV

As grounds for reversal, the appellant's argument is that it is unfair to an architect to hold him liable for errors in design when injuries are sustained many years after the rendition of his services and he is no longer associated with the project. It emphasizes that the building where the plaintiff fell is no longer within the appellant's supervision or control, that in the meantime the building may have been transferred from owner to owner, and that the conditions, if dangerous, could have been remedied by the owner. Doubtless, the interpretation of a Statute of Limitations produces hardships in many instances, and in this instance the general rule may place a hardship on an architect, just as in *Schmidt v Merchants Desp. Transp. Co.* (270 NY 287, *supra)* a hardship was thrust on the plaintiff.

In response to the problem faced by architects, courts have formulated two approaches to lighten their professional plight.

Outside of New York, the rule has been adopted by some courts that an architect is not liable for injuries occurring after the work was completed and accepted by the owner *(Wright v United States,* 568 F2d 153; *Sherman v Miller Constr. Co.,* 90 Ind App 462; *Miller v Davis & Averill,* 137 NJL 671). The rule has now been repudiated in New Jersey *(Totten v Gruzen,* 52 NJ 202), and is not the rule in New York *(Inman v Binghamton Housing Auth.,* 3 NY2d 137, *supra).*

The second approach was to condition architectural liability by the test whether the danger alleged to have been created was patent. If the danger was patent, the architect was not liable *(Inman v Binghamton Housing Auth., supra; Di Perna v Roman Catholic Diocese of Albany,* 30 AD2d 249). It is questionable whether this test survives. *Inman* dealt with an action brought six years after an apartment house had been completed and turned over to the owner. The plaintiff was an infant who fell off a stoop alleged to have been built without a protective rail. He sued both the architect and the builder, as well as the owner. The issue before the court involved a third-party complaint instituted by the owner against the architect and the builder. Following the doctrine of *MacPherson v Buick Motor Co.* (217 NY 382, *supra),* the court held that a cause of action would lie against an architect or a builder for their negligent handiwork, but that their liability did not extend beyond hidden or latent damages, under limits laid down in *Campo v Scofield* (301 NY 468, 471). *Campo,* however, is not any longer the dominant authority in New York.

██ The rule in New York now is that "a manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger" *(Micallef v Miehle Co.,* 39 NY2d 376, 385). Since *Inman* followed *MacPherson v Buick Motor Co.*—a case treating an industrial manufacturer—in considering the extent of the liability of an architect, by parity of reasoning the liability of an architect must now be treated under the same tests currently applied toward an industrial manufacturer. That is to say, the test of patent or latent defect is not to be applied, and the question of liability depends rather on whether the architect exercised due care in preparing his plans.

If a departure from the general rule governing the accrual of a cause of action for tort liability based on negligence is to be made on behalf of an architect sued by a person outside a

professional relation with the architect, we think that it should be accomplished by the Legislature, just as the Legislature has acted on behalf of the medical profession (see, e.g., CPLR 214-a; see, generally, Comment, Medical Malpractice in New York, 27 Syracuse L Rev 657). The general rule has been effective for some time, and the Legislature must be presumed to know its extent. The Statute of Limitations has been changed from time to time in New York in response to current needs and expectations in society and has been peculiarly a subject of legislative solicitude (Note, Developments in the Law: Statutes of Limitations, 63 Harv L Rev 1177, 1192-1193, n 157).

In weighing the force of the appellant's contention that liability may hang over its head for many years after its work has been finished, we must also put in the balance the fact, as Special Term observed, that an injured party may be barred from recovery because of the lapse of the statutory period even before his injury was sustained. There are detriments which will be experienced by either the injured party or the architect, depending on the character of the rule adopted. Weighing the relative detriments, we are not persuaded that we should depart from the general rule—a rule, which we note, is applied in other jurisdictions (*Chrischilles v Griswold*, 260 Iowa 453; *Abramovski v Kilps Sons Realty*, 80 Wis 2d 468; *Society of Mt. Carmel v Fox*, 31 Ill App 3d 1060; cf. *Hendrickson v Sears*, 365 Mass 83).

## V

Kreisberg and Sprain have urged on this appeal that their cross complaint against the architect should be preserved in the event we were to reverse Special Term. They assert that their right to indemnity or contribution as owners remains unaffected by the running of the Statute of Limitations against the plaintiff in favor of the architect.

A cause of action for indemnity and contribution does not accrue until payment of the underlying liability has been made by the suing party (*Klinger v Dudley*, 41 NY2d 362, 369; *Musco v Conte*, 22 AD2d 121, 125-126). Hence, even if we were disposed to hold that the plaintiff is out of court on her claim against the architect because the Statute of Limitations has run against her, the architect would still be obliged to defend against a claim of negligence alleged in the cross complaint by the owner. This consideration strengthens the conclusion that

we should not, for the reasons of policy advanced by the architect, disregard the traditional and accepted rule.

## VI

We therefore affirm the order of Special Term.

LAZER, RABIN and GULOTTA, JJ., concur.

Order of the Supreme Court, Orange County, entered April 26, 1978, affirmed, with one bill of $50 costs and disbursements payable jointly to respondents appearing separately and filing separate briefs.