(August 23, 1985)

■ In the Matter of RUBEN FRANCO, Appellant, v ORLANDO VELEZ et al., Respondents, and NICHOLAS C. CREMONESE et al., Respondents-Respondents. In the Matter of BERNARD M. HERMAN et al., Respondents, v ORLANDO VELEZ et al., Respondents, and RUBEN FRANCO, Respondent-Appellant.—Judgment, Supreme Court, Bronx County (DiFede, J.), entered on or about August 19, 1985, which, *inter alia,* granted the motion

to confirm the referee's report and dismissed the application to validate the candidacy of the appellant for the Democratic Party nomination of Judge of the Civil Court, unanimously reversed, on the law, without costs or disbursements, the motion denied, the petition to validate granted, and the Board of Elections directed to place the name of Ruben Franco on the ballot.

We are again confronted with the recurring problem of applying the language of Election Law § 6-134 to a specific set of designating petitions.

In the instant case, petitioner seeks an order validating his designating petitions for nomination as a Democratic Party candidate for the office of Judge of the Civil Court of the County of Bronx.

At issue is the cover sheet submitted with said petitions. That sheet, insofar as here relevant, states as follows:

| | |
|---|---|
| Total No. of volumes: | 21 |
| Total No. of pages: | 1,756 |
| Total No. of signatures: | 18,458 |

The objections raised by respondent are to the effect that only 19 volumes were filed, that the total number of pages was 1,730 (instead of 1,756) and that the total number of signatures was 18,315 (instead of 18,458).

It appears without contradiction, that, in fact, a total of 21 volumes were submitted on behalf of petitioner's candidacy. While the volumes are numbered sequentially commencing with the number 1 and ending with number 21, it appears that two of the volumes are numbered 10 and that two other volumes were separately submitted, each labeled as "one of one", with the result that there are no volumes numbered 5, 12 and 14. While respondents assert that two volumes are "missing," it is clear that when the two separately submitted volumes are included, the number 21 referred to on the cover sheet accurately reflects the total number.

The arithmetic discrepancies urged by respondent were found by both the Board of Elections and Special Term to be the basis for invalidating petitioner's designating petitions. We do not agree that Election Law § 6-134 requires, or intends, such result under circumstances such as those here detailed. Accordingly, we reverse and reinstate petitioner's nominating petitions.

While the Court of Appeals has held that there must be

compliance with the statutory requirements of the Election Law as to content and substantial compliance as to form (*Matter of Hutson v Bass,* 54 NY2d 772; *Matter of Engert v McNab,* 60 NY2d 607), it has also indicated that the statute is to be interpreted in a reasonable and sensible manner to fulfill the purpose for which the statute was designed, that is, to provide "assurance against fraud in connection with the collection of signatures for designating petitions" (*Matter of Sheehan v Scaringe,* 60 NY2d 795). Thus, in the *Sheehan* case (*supra*), where the various volumes continued with consecutive pagination rather than with each volume commencing with page 1, the court reversed the lower court's invalidation of the petitions on such ground.

In the instant case we are dealing with an office that requires 5,000 signatures and petitions that contain signatures greatly in excess of that number. While the legislatively mandated requirements of the statute are designed to insure against fraud in connection with the collection of signatures, that goal would in no way be furthered by permitting inconsequential arithmetic errors, wholly unrelated to any fraud, to be utilized as the basis for disenfranchising a large bloc of voters, as would here be the case. To do so would, indeed, be to throw out the baby with the bath water.

In seeking to sustain the integrity of the electoral process by enacting statutes such as section 6-134, the Legislature obviously intended to provide a mechanism to insure that the free will and choices of the electorate would be accurately registered, untainted by corruption or chicanery. To apply that mechanism to insubstantial and inadvertent errors in a manner which deprives the very voters for whose benefit the statute was enacted of their franchise would be to pervert and frustrate the *raison d'etre* of the statute.

Should blind and unreasonable adherence to stringent formality, in the absence of fraud or misconduct, take precedence over the historically cherished and revered right of the electorate to fully exercise its franchise? We think not. The overriding concern of the courts with affording voters an opportunity to fully and freely exercise their rights was eloquently and perceptively expressed by this court over 40 years ago in *Matter of Lefkowitz v Cohen* (262 App Div 452, 454, *affd* 286 NY 499), a case involving the ultimate validity of a candidate's petition where substantial numbers of the signatures were found to be fraudulent, as follows: "We think it was error in such case to hold void a petition which contained a sufficient number of valid signatures as specified

in the Election Law. To reject this petition would result in depriving qualified signers of the benefit of having the name of their designee appear on the official ballot. They should not lose their right to designate a candidate simply because others over whom they have no control may have perpetrated a wrong. Where they, as well as the candidate, are wholly innocent of wrongdoing, it would be unjust to deprive them of having their designee's name printed upon the official ballot to be voted on at the primary election."

Those arguments are even more appropriate in the instant case where no fraud is involved but only inconsequential discrepancies. Concur—Carro, J. P., Bloom, Fein, Rosenberger and Ellerin, JJ.