**WARWICK ADMINISTRATIVE GROUP, Ford Motor Company, Georgia–Pacific Corporation, Reichhold Chemical Company, Inc. and Union Carbide Corporation, Plaintiffs,**

v.

**AVON PRODUCTS, INC., Inco Alloys International, Inc., International Paper Company, Inc., Isa in New Jersey, Inc., Jones Chemical, Inc., Lightron Corporation, Nepera, Inc., New York University Medical Center, Orange & Rockland Utility, Inc., Revere Smelting & Refin-**

ing Corporation of New Jersey, La Mela Sanitation Service, Inc., Round Lake Sanitation Corporation, Waste Management of New York, Waste Management of Connecticut, and John Doe 1 through 50, Defendants.

No. 92 Civ. 9469.

United States District Court, S.D. New York.

May 3, 1993.

Edwards & Angell, New York City by Roger Slade, Susan S. Egan, Lynn Wright, Jill Tracy, for moving defendants.

Sills Cummis Zuckerman Radin Tischman Epstein & Gross, Newark, NJ by Philip R. Sellinger, for defendant Orange and Rockland Utilities.

Marilyn J. Slaatten, Westchester County Atty., White Plains, NY by Michael J. McDermott, for defendant Westchester County.

Pitney, Hardin, Kipp & Szuch, Morristown, NJ by Stephen G. Traflet, Gail H. Allyn, Jane Dobson, William H. Hyatt, Jr.,

David W. Payne, Leboeuf, Lamb, Leiby McRae, Albany, NY by Robert J. Alessi, for plaintiffs.

## OPINION

GOETTEL, District Judge.

In February 1992, the EPA issued an order directing the Town of Warwick and certain companies to clean up the Warwick Landfill Superfund Site pursuant to a remedial design set forth in an earlier EPA Record of Decision. This action arises from claims by certain of the parties who were directed to participate in the cleanup (as well as one additional plaintiff) that the defendants are liable for response and contribution costs. Plaintiffs also allege a pendent state law claim based on defendants' alleged negligent acts.

## FACTS

The Warwick Landfill ("the Site") is located in the Town of Warwick, Orange County, approximately one and a half miles northeast of the Village of Greenwood Lake. The Site was owned by the Penaluna family from 1898 to 1984 and leased as a municipal landfill by the Town of Warwick ("the Town") from the mid–1950s to 1977. During this time period, substances deemed "hazardous" under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") were deposited at the Site.

From 1977 to 1980, the Site was leased by Grace Disposal and Leasing, Ltd. ("Grace") which continued to operate it as a landfill. Grace is owned and operated by defendants Round Lake Sanitation Company ("Round Lake") and ISA of New Jersey ("ISA"). CERCLA hazardous substances continued to be deposited at the Site until its closure in 1980. As a result of the Site's operation as a landfill, an approximately thirteen acre landfill mound was created on the 25 acre leasehold parcel.

In 1985, the Environmental Protection Agency ("EPA") proposed the inclusion of the Site on the National Priorities List. It was formally placed on the list in 1989. In December of 1988, the EPA sent special notice letters to potentially responsible par-

ties inviting them to perform a Remedial Investigation and Feasibility Study ("RI/FS"). Because the parties failed to make a good faith offer to undertake the study, the EPA hired Ebasco Services, Inc. to perform the work using Superfund money.

As a result of the RI/FS study, the EPA determined that Site remediation should be divided into two operable units. Operable Unit 1 ("OU 1") would be concerned with controlling the source of the contamination by capping the landfill and implementing point of use treatment at residential wells surrounding the Site. After public comment, the EPA selected a remedy for OU 1 which included, *inter alia*, a landfill cap, residential well sampling and point of use treatment systems, a ground water monitoring program, and measures to mitigate damage to adjacent wetlands.

New York State concurred with the EPA's selected remedy, and in July of 1991, the EPA wrote to the potentially responsible parties inviting them to undertake the clean up. None responded by the September 30, 1991 deadline.

In February of 1992, the EPA issued an Administrative Order finding Ford Motor Company ("Ford"), Georgia–Pacific Corporation ("Georgia–Pacific"), ISA, Round Lake, Union Carbide Corporation ("Union Carbide") and the Town liable parties under § 107(a) of CERCLA, 42 U.S.C. § 9607(a), and ordering them to implement the selected remedy.

In response Ford, Georgia–Pacific and Union Carbide formed the Warwick Administrative Group ("the Warwick Group") to implement Site clean up. The Group invited the defendants in this action to join with them in the Site clean up and suggested that alternative dispute resolution be used to resolve each party's respective liability. Only plaintiff Reichhold Chemical Company, Inc. ("Reichhold") chose to join the Group.

On December 31, 1992, Ford, Georgia–Pacific, Reichhold, Union Carbide, the Warwick Group and the Town brought this cause of action seeking to recover response costs incurred as well as damages sustained as a result of the release or threatened release of hazardous substances at the Site. The complaint alleges that since April 1992, the Group and the Town have complied with the EPA's order and have incurred costs and damages as a result. Plaintiffs also seek a declaratory judgment that defendants are liable for future response costs and damages.

The named defendants in this action are Avon Products Inc. ("Avon"), the County of Westchester ("Westchester"), Inco Alloys International, Inc. ("Inco"), International Paper Company, Inc. ("International Paper"), Jones Chemicals, Inc. ("Jones"), Lightron Corporation ("Lightron"), Nepera, Inc. ("Nepera"), New York University Medical Center ("NYUMC"), Orange & Rockland Utility Inc. ("O & R Utilities"), Revere Smelting & Refining Corporation of New York ("Revere"), ISA, La Mela Sanitation Service, Inc. ("La Mela"), Round Lake, Waste Management of New York ("WMNY"), and Waste Management of Connecticut ("WMCN"). The amended complaint also names defendants John Doe 1 through 50 as yet unidentified individuals or entities.

All plaintiffs, except the Town, seek damages and a declaratory judgment declaring all defendants (1) jointly and severally liable to plaintiffs for all response costs incurred thus far and for any future response costs, pursuant to § 107(a) of CERCLA, 42 U.S.C. § 9607(a) and (2) liable for contribution to plaintiffs for response costs, pursuant to § 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1). The Town alleges the same claims against all defendants except Westchester and O & R Utilities.

Further, plaintiffs, except for the Town, allege a negligence claim against all defendants. The Town alleges a negligence claim against all defendants except Westchester and O & R Utilities. Finally, Ford brings a breach of contract claim against ISA based on various contracts for the disposal of certain waste materials executed by the two parties between 1972 and 1979. Ford alleges that ISA breached the terms of the disposal contracts which required that waste be disposed in accordance to all applicable laws.

In March of 1993, defendants Inco, International Paper, Jones, Nepera, NYUMC, Lightron and Revere ("the moving defen-

dants") moved that we dismiss the claims against them pursuant to F.R.Civ.P. 12(b)(6) for failure to state a. claim upon which relief can be granted. Westchester and O & R Utilities joined in the motion to dismiss claiming that the same arguments apply to them with equal force.

On April 13, 1993, the EPA issued an Administrative Order for Remedial Design and Remedial Action naming moving defendants International Paper, Nepera and Revere as well as International Business Machines and plaintiff Reichhold as respondents. The order found the respondents liable parties under § 107(a) of CERCLA, 42 U.S.C. § 9607(a), and ordered them to implement the selected remedy. In spite of the order, International Paper, Nepera and Revere still assert that plaintiffs' claims against them should be dismissed.

## ANALYSIS

■ Plaintiffs and defendants dispute the standard to be applied by a district court upon a rule 12(b)(6) motion to dismiss a CERCLA claim. Generally, F.R.Civ.P. 8(a) requires that the complaint set forth "a short and plain statement of the claim." "[A]ll factual allegations in the complaint must be taken as true" and a complaint should not be dismissed unless it is beyond a doubt that plaintiff cannot prove a set of facts which would entitle him or her to relief. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

However, moving defendants contend that CERCLA litigation requires a higher level of specificity in pleadings. Defendants cite a Sixth Circuit case and four district court cases in support of this proposition.

The Supreme Court considered the propriety of a heightened pleading standard developed through case law in a recent case, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), 1993 U.S. LEXIS 1963. In *Leatherman*, the Supreme Court considered the Fifth Circuit's heightened pleading standard in civil rights actions alleging municipal liability pursuant to 42 U.S.C. § 1983.

The Court held that a heightened pleading standard is "impossible to square" with "the liberal system of 'notice pleading' set up by the Federal Rules." *Id.* at ——, 113 S.Ct. at 1160. The Court noted that under *Conley* all that is required is a "short plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman*, —— U.S. at ——, 113 S.Ct. at 1163, *quoting Conley*, 355 U.S. at 47, 78 S.Ct. at 102. Noting that Federal Rule 9(b) specifically provided two exceptions to notice pleading for averments of fraud or mistake, the Court held that such express exceptions are the only exceptions to the general rule. Any other exception "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Leatherman*, —— U.S. at ——, 113 S.Ct. at 1163.

While there appears to be some case law support for requiring a heightened pleading standard, we find that the *Leatherman* reason applies with equal force here. Further, a closer examination the cases cited by moving defendants reveals that they are not incompatible with a notice pleading standard or are fatally inconsistent with *Leatherman*.

In *McGregor v. Industrial Excess Landfill, Inc.*, 856 F.2d 39 (6th Cir.1988), the Sixth Circuit specifically quotes *Conley* to establish the proper pleading standard, but then goes on to state, "[implicit in *Conley* ] is the notion that the rules do contemplate a statement of circumstances, occurrences, and events in support of the claim being presented." *McGregor*, 856 F.2d at 42, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215 (1969). In *McGregor*, the plaintiffs alleged that the United States, the State of Ohio and plaintiffs "have incurred and will continue to incur costs in connection with activities under CERCLA, including clean up, removal and remedial action." While plaintiffs listed expenditures by the state and federal government, they failed to list any costs they had personally incurred. *Id.* at 42, 43. Thus, the Sixth Circuit's focus appears not to have been on the fact that plaintiffs failed to plead with specificity all the response costs it paid, but the fact that plaintiff only listed government expenditures

which suggested that they had not personally borne any of the response costs, a necessary element for a claim under § 107.

The propriety of response costs has proved a thorny issue for federal courts. Extensive litigation has occurred to determine whether specific costs are recoverable under § 107(a). *Ascon Properties v. Mobil Oil Co.*, 866 F.2d 1149, 1154 (9th Cir.1989). In order to deal with this difficulty, several courts have required that plaintiff allege at least one type of response cost cognizable under CERCLA. *See Ascon*, 866 F.2d at 1154; *Cook v. Rockwell Internat'l Corp.*, 755 F.Supp. 1468 (D.Colo.1991); *Bradley Indust. Park v. Xerox Corp.*, No. 88–7574 (CSH), 1991 WL 20008 (S.D.N.Y. Feb. 4, 1991), 1991 U.S.Dist. LEXIS 1492.[1] Further, even though the *Ascon* court required that plaintiff allege a cognizable response cost, it found allegations that plaintiff had "been forced to incur response costs and in fact spent substantial amounts toward the clean-up, removal and remedial action" sufficient. *Ascon*, 866 F.2d at 1154.

The two other cases cited by defendants are *Barnes Landfill, Inc. v. Town of Highland*, 802 F.Supp. 1087 (S.D.N.Y.1992) and *Cash Energy, Inc. v. Weiner*, 768 F.Supp. 892, 900 (D.Mass.1991). In *Cash Energy*, a Massachusetts district court wrote, "it is a reasonable prediction that higher courts ... will extend specificity pleading requirements to CERCLA cases, with appropriate subsidiary conditions.... Unless and until guidance to the contrary appears in legislation or precedent, I will so rule." *Id.* at 900. The court based its prediction on what it deemed to be a trend towards particularity in pleadings in certain types of cases. *Id.* at 899–900. However, *Leatherman*, specifically prohibits this type of judicial creation of heightened pleading requirements. Further, it expressly overturned the line of civil rights cases requiring heightened specificity which the *Cash Energy* relied upon as its principal example of "the trend toward specificity."

Therefore, in light of the *Leatherman* decision, we hold that a heightened pleading standard does not apply to CERCLA cases.

### I. Count One: CERCLA Liability

■ In order to establish a private cost recovery action under CERCLA, plaintiffs must prove 1) that a defendant falls under one of the four categories of covered persons, 2) that the site is a "facility" as defined by CERCLA, 3) that there has been a release or threat of release of a hazardous substance at the facility, 4) that the release or threat of release caused the plaintiff to incur response costs, and 5) that plaintiff's costs were "necessary costs of response ... consistent with the National Contingency Plan." 42 U.S.C. § 9607(a); *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir.1992).

■ Covered persons under CERCLA's liability provisions include:

> any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances.

42 U.S.C. § 9607(a)(3). The complaint alleges that each of the moving defendants, Inco, International Paper, Jones, Lightron, Nepera, NYUMC, Revere, O & R Utilities and Westchester "arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of solid waste [which it owned or possessed] by another party or entity at the Site," and that studies performed by the EPA and others have shown that such waste contained hazardous substances making each of those defendants liable, pursuant to § 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), for all response costs.

Plaintiffs claim that their complaint sufficiently alleges that the moving defendants arranged for the disposal or treatment of

---

1. Even the proposition that plaintiff must allege a particular response cost is not accepted by all courts. *See Alloy Briquetting Corp. v. Niagara Vest Inc.*, 756 F.Supp. 713, 717 (W.D.N.Y.1991) (holding plaintiff need not particularize the costs it incurs); *State of New York v. General Electric Co.*, 592 F.Supp. 291, 298 (N.D.N.Y.1984) (same).

hazardous substances at the Site. We disagree. Plaintiffs state that they "clearly allege that each of the moving defendants sent solid waste *containing* hazardous substances." Had plaintiffs so stated, their argument opposing defendants' motion would be much stronger.[2] However, no such language is used in the complaint.

Reading the complaint literally, plaintiffs have alleged no more than the fact ·that moving defendants arranged for the treatment or disposal of solid waste and that studies have shown that solid waste contains hazardous substances. Plaintiffs do not state to which studies they refer to, nor do they state the source from which the solid waste studied came. Absent some allegation that the defendants's specific solid waste contained hazardous substances, plaintiffs have failed to allege that the defendants are liable parties under § 107(a)(3). Without a substantial tie between the studies and the solid waste generated by the individual defendants which would make plaintiff's allegation that defendants arranged for the transport or disposal of solid waste in essence an allegation that hazardous substances were transported or deposited, we cannot say that plaintiffs have stated a claim upon which relief can be granted.

■ Plaintiffs state that the Payne affidavit submitted in opposition to defendants' motion to dismiss makes it clear that waste associated with defendants contained hazardous substances. However, on a motion to dismiss pursuant to rule 12(b)(6), we cannot look outside the pleadings. *LaBounty*, 933 F.2d at 123.

Moving defendants argue that the amended complaint was drafted to allow plaintiffs to back away from the original complaint's straight-forward allegation that moving defendants arranged for the transport or disposal of hazardous substances. Ironically, at oral argument, plaintiffs' attorney stated that the amended complaint was not an attempt to soften allegations against defendants.

Rather, he claimed it was intended to provide more specificity to the complaint by replacing a conclusory statement such as that each defendant "arranged for the disposal or treatment, or arranged with a transporter for transport or disposal or treatment, of Hazardous Substances owned or possessed by such defendant." In light of plaintiffs' contentions that their amended complaint was meant to allege that hazardous waste was contained in defendants' solid waste, we give plaintiffs twenty days to amend their § 107 claim.

## II. *Count Two: CERCLA Contribution*

■ Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1) creates a private right of action by which "[a]ny person may seek contribution from any other person who is liable or potentially liable under section [107, 42 U.S.C. §] 9607." The contribution provision codifies the federal common law principle that contribution can only be obtained from parties liable under governing law. *Kelley v. Arco Indust. Corp.*, 739 F.Supp. 354, 356–57 (W.D.Mich.1990). Thus, a party cannot be liable for contribution unless it is a responsible party as defined by § 107. *Id.* at 357.

■ Because, as previously discussed, plaintiffs have failed to state that defendants are liable parties under § 107, plaintiffs have also failed to state a claim for contribution under § 113. However, in light of the considerations discussed above, plaintiffs are also given twenty days to amend their § 113 claim.

## III. *Count Three: State Negligence Claim*

The amended complaint alleges "that the defendants are liable for negligence in tort to plaintiffs for injuries suffered or to be suffered by plaintiffs as a direct and proximate result thereof." Defendants claim that plaintiffs' negligence claims should be dismissed because 1) under New York law a defendant has no duty to a plaintiff for a dangerous condition on property unless the defendant

---

**2.** Plaintiffs' original complaint alleged that each moving defendant "by contract, agreement or otherwise arranged for the disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of Hazardous Substances owned or possessed by [each moving defendant]." Oddly, plaintiffs' amended complaint makes their claim less strong and their opposition to a motion to dismiss much weaker.

has an "occupancy, ownership, control, or special use of such premises" *Balsam v. Delma Engineering Corp.*, 139 A.D.2d 292, 532 N.Y.S.2d 105 (1st Dep't 1988), *appeal dismissed in part, denied in part* 73 N.Y.2d 783, 536 N.Y.S.2d 741, 533 N.E.2d 671 (1988), 2) New York law does not allow a negligence action based solely on economic loss, *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir.1984) and 3) the three year statute of limitations for negligence actions have run for plaintiffs Ford, Reichhold and Union Carbide's claims. N.Y.C.P.L.R. § 214–c(2).

At oral argument, plaintiffs' attorney stated that plaintiffs were no longer alleging a negligence claim and were pressing a contribution claim in its stead. Plaintiffs' opposition papers reflect this position and state that they meant to allege that defendants negligently disposed of hazardous substances at the Site, and because they have been held responsible for the Site clean up, they have a claim for contribution.

Since plaintiffs appear to have dropped their negligence claim, we assume that it will be so reflected in their amended complaint and therefore do not reach defendants' motion to dismiss the negligence cause of action. Because the contribution claim was not pled in plaintiffs' complaint, we assume that they seek leave to amend their complaint to allege such a claim.

■ In order to determine whether plaintiffs should be allowed to add a state law contribution claim, we analyze whether or not such a claim is available. New York's contribution statute states:

> two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y.C.P.L.R. § 1401.

At oral argument, plaintiffs claimed that they are entitled to contribution under § 1401 for response costs they have paid under CERCLA. Before deciding whether § 1401 applies in this instance, we must first determine whether CERCLA's contribution provisions pre-empt state law contribution claims.

Prior to the enactment of § 113, federal courts seeking to determine whether liable parties had a cause of action for contribution for response costs found that such

> a right to contribution, if it exists in the framework of a particular statutory scheme, must have been created in one of two ways. '[F]irst, through the affirmative creation of a right of action by Congress ... or, second, through the power of federal courts to fashion a common law of contribution.'

*United States v. New Castle County*, 642 F.Supp. 1258, 1262 (D.Del.1986), *quoting Texas Indust., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 2065, 68 L.Ed.2d 500 (1981). *See State of Colo. v. Asarco*, 608 F.Supp. 1484, 1489 (D.Colo.1985) (holding that Congress intended issues of contribution "to be determined under traditional and evolving principles of federal common law") and *United States v. Chem–Dyne Corp.*, 572 F.Supp. 802, 809 (S.D.Ohio 1983) (finding that "the delineation of a uniform federal rule of decision is consistent with the legislative history and policies of CERCLA and ... that no compelling local interests mandate the incorporation of state law"). Thus, the fact that the federal common law of contribution was codified in § 113 should not alter the fact that it is federal rather than state law governing CERCLA contribution claims.

In *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651 (N.D.Ill. 1988), *aff'd on other grounds*, 861 F.2d 155 (7th Cir.1988), a district court tried to reconcile the cases which held that federal rather than state law determined the availability of an action for contribution with CERCLA provisions which expressly state that CERCLA does not divest parties of any causes of action which do not fall within the act.[3] The

---

**3.** Specifically, § 107(e)(2) reads, "[n]othing in this subchapter ... shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guar-

court rejected as overbroad defendants' argument that CERCLA precluded all state law causes of action where plaintiff seeks contribution for response costs incurred as a result of an EPA ordered waste site clean up. *Id.* at 657. However, such state contribution claims were only available against parties not liable for contribution under CERCLA. *Id.* at 658. *See United States v. Hooker Chemicals and Plastics Corp.*, 739 F.Supp. 125, 127–29 (W.D.N.Y.1990) (holding that a defendant who was not a liable or potentially liable party under § 107(a) might still be subject to a state law contribution claim for response costs).

Thus, under *Hines* and *Hooker*, it appears that plaintiffs may have a state law claim for contribution against any defendants who are not liable for contribution under CERCLA. However, our inquiry does not end here. While we could allow plaintiffs to amend their complaint to properly allege a state contribution claim should any defendants prove not to be liable under § 107(a), we must decide whether plaintiffs can state a claim under state law.

 Application of the New York contribution statute is based on the "fact of liability to the same person for the same harm rather than the legal theory upon which tort liability is based" and contribution is allowed in cases involving strict liability in tort. *Board of Education v. Sargent*, 71 N.Y.2d 21, 28, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987). However, "it is nonetheless true that the existence of some sort of tort liability is a prerequisite to application of the statute." *Id.* In this instance, no tort liability has been established as plaintiffs have only been held liable for response costs under CERCLA. While a state tort claim might lie against plaintiffs, a cause of action for contribution does not accrue until payment of the underlying liability has been made by the suing party. *Cubito v. Kreisberg*, 69 A.D.2d 738, 419 N.Y.S.2d 578 (2nd Dep't 1979), *aff'd* 51 N.Y.2d 900, 434 N.Y.S.2d 991, 415 N.E.2d 979 (1980). Because any state cause of ac-

tion for contribution would be premature, we deny plaintiffs leave to amend their complaint to allege a state contribution claim.

In summary, we grant defendants' motion to dismiss plaintiffs' CERCLA claims. However, plaintiffs are given twenty days to amend their claims under § 107 and § 113. Because plaintiffs appear to seek to withdraw their negligence claim, we assume this will be so reflected in the amended complaint and do not reach defendants' motion to dismiss the claim. Plaintiffs' implied request to amend to allege a state contribution claim is denied.

SO ORDERED.

---

antor, has or would have, by reason of subrogation or otherwise against any person." 42 U.S.C. § 9607(e)(2). Similarly, § 302(d) reads, "[n]othing in this chapter shall affect or modify in any way the obligations or liabilities of any person

under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants." 42 U.S.C. § 9652(d).