WAUSAU BUSINESS INSURANCE COMPANY as subrogee to the rights of Central Synagogue, Plaintiff,

v.

TURNER CONSTRUCTION COMPANY, Amis Inc. and Aris Development Corporation, Defendants.

Turner Construction Company, Third–Party Plaintiff,

v.

Trident Mechanical Systems, Inc., Trident Mechanical Systems, Inc., a division of Dualstar Technologies Corp., Trident Mechanical Systems, Inc., a wholly-owned subsidiary of Dualstar Technologies Corp., Dualstar Technologies Corp., Atkinson Koven Feinberg Engineers LLP, Schuman Lichtenstein Claman Efron Architects, Central Synagogue, and Amtex Electrical Corp., Third–Party Defendants.

Central Synagogue, Fourth–Party Plaintiff,

v.

Accordia, Inc. and Accordia, Inc., d/b/a Accordia Northeast, Fourth–Party Defendants.

No. 99 CIV. 0682(RWS).

United States District Court, S.D. New York.

July 19, 2001.

of Counsel), for Wausau Business Insurance Company.

Friedman Kaplan Seiler & Adelman, New York City (Bruce S. Kaplan, Robert D. Kaplan, Andrew R. Greengrass, of Counsel), for Central Synagogue.

Lester, Schwab, Katz & Dwyer, New York City (Seth I. Weinstein, of Counsel), for Amis, Inc.

Palmeri & Gaven, New York city (John J. Palmeri, of Counsel), for Aris Development Corp.

Torino & Bernstein, Mineola, NY, for Aris Development Corp.

Jones Hirsch Connors & Bull, New York City (Chris Christofides, James H. Rodgers, of Counsel), for Defendant/Third–Party Plaintiff.

Margolis Edelstein, Philadelphia, PA (Michael P. McKenna, of Counsel) McKeegan, McShane & Drago, New York City (George P. McKeegan, of Counsel), for Trident Mechanical systems, Inc.

Milber Makris Plousadis & Seiden, White Plains, NY (Peter Seiden, of Counsel), for Schuman Lichtenstein Claman Efron.

Gogick, Byrne & O'Neill, New York City (Stephen P. Schreckinger, of Counsel), for Atkinson Koven Painberg Engineers.

## OPINION

SWEET, District Judge.

Defendant Turner Construction Company ("Turner") has moved for leave to file an interlocutory appeal of the following issues: (1) the June 4, 2001 order denying Turner's motion for a mistrial based on an alleged "Mary Carter" agreement between plaintiffs Wausau Business Insurance Company ("Wausau") and Central Syna-

Cozen & O'Connor, New York City (Michael J. Sommi, Christopher C. Fallon, Jr.,

gogue and third-party defendants Trident Mechanical Systems, Inc. ("Trident") and Dualstar Technologies, Inc. ("Dualstar"); (2) the May 31, 2001 order dismissing all claims against defendant/third-party defendant Schuman Lichtenstein Claman Efron Architects ("SLCE"); (3) the April 30, 2001 order severing defendant/third party defendant Amtex Electrical Corp. ("Amtex") as a party to the *Wausau* trial; (4) the oral order denying Turner's motion to dismiss the entire jury pool due to a prospective juror's allegedly prejudicial statements; (5) whether counsel for Trident and counsel for Wausau improperly addressed the percentage of liability issue in closing arguments before the jury in the first phase of this bifurcated trial; and seeking (6) an order affirming the jury's verdict and certifying that order for immediate appeal to the Second Circuit Court of Appeals. Turner also seeks an order staying the commencement of the damage phase of the trial pending hearing and determination of the issues on appeal if the interlocutory order is granted. Defendant/Aris Development Corporation ("Aris") joins Turner's motion. Plaintiffs Wausau and Central Synagogue, as well as defendants/third-party defendants Trident, Dualstar, Schuman Lichtenstein Claman Efron Architects ("SLCE"), and Amtex oppose. For the reasons set forth below, the motion will be denied.

■ Title 28 United States Code section 1292 grants district courts discretion to issue interlocutory orders when an issue or issues involve "[1] controlling questions of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see SEC v. Credit Bancorp, Ltd.,* 103 F.Supp.2d 223, 226 (S.D.N.Y. 2000). "The statute must be strictly construed and 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Colon v. BIC USA, Inc.,* 2001 WL 88230, 2000 U.S. Dist. LEXIS 797, at *2 (S.D.N.Y. Jan. 30, 2001) (*quoting Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990)).

■ In considering a request for certification, a district court must carefully assess whether each of the three conditions has been met. *See Primavera Familienstifung v. Askin,* 139 F.Supp.2d 567 (S.D.N.Y.2001). To determine whether the first element has been met, district courts may consider whether reversal could result in dismissal or could significantly affect the conduct of the action, or whether the certified issue has precedential value for a large number of cases. *See Klinghoffer,* 921 F.2d at 24–25. A mere claim that the district court's ruling was incorrect does not demonstrate a substantial ground for difference of opinion under the second element. *See Scott v. The Dime Savings Bank of New York,* 1993 WL 350046 at *1, 1993 U.S. Dist. LEXIS 12325 at *3–4 (S.D.N.Y. Sept. 3, 1993). Finally, in considering whether the third factor has been met, district courts should assess whether the appeal "promises to advance the time for trial or shorten the time required for trial." *In re Oxford Health Plans, Inc.,* 182 F.R.D. 51, 53 (S.D.N.Y.1998) (quotation omitted). *See also In re Duplan Corp.,* 591 F.2d 139, 148 n. 11 (2d Cir.1978) ("The critical requirement is that [interlocutory appeal] have the potential for substantially accelerating the disposition of the litigation.").

■ The Second Circuit has repeatedly emphasized that district courts must "exercise great care in making a § 1292(b) certification." *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Dist.*

*Corp.,* 964 F.2d 85, 89 (2d Cir.1992). *See also Klinghoffer,* 921 F.2d at 25. Certification is appropriate only in "exceptional cases," where early appellate review "might avoid protracted and expensive litigation." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 690 F.Supp. 170, 172 (S.D.N.Y.1987). Interlocutory appeal was not intended as a "vehicle to provide early review of difficult rulings in hard cases." *German v. Federal Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1398 (S.D.N.Y. 1995). The benefit to the district court in avoiding an unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case. *See Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 631 (2d Cir.1991).

### 1. *Failure to Declare a Mistrial Due to the Alleged "Mary Carter Agreement"*

■ In a prior opinion, this Court denied Turner's mid-trial motion for a mistrial due to its discovery of a secret agreement between plaintiffs and Trident/Dualstar. *See Wausau Business Ins. Co. v. Turner Const. Co.,* No. 99 CIV. 0682(RWS), 2001 WL 604188 (S.D.N.Y. June 4, 2001) (*Wausau III* ). Turner contends that an interlocutory appeal of this order is appropriate because the agreement was in fact an unlawful "Mary Carter agreement" that gave Trident an improper financial motive to deflect blame on Turner in light of the Turner's action against Trident's insurer, Kemper. At the time the prior opinion was issued, the parties to the settlement agreement had not yet memorialized it in writing. They have subsequently done so, and Trident has submitted the Joint Tortfeasor Release to the Court in support of its opposition to this motion. (Attachment to Horneff Letter of July 10, 2001.) A review of the release reveals no cause to alter the prior opinion.

As Turner has raised no new issues of law or fact creating substantial grounds for a difference of opinion as to controlling law on this issue, the motion for leave to file an interlocutory appeal of the order denying a mistrial is hereby denied.

### 2. *Dismissal of SLCE*

■ Turner first argues that its third-party complaint for indemnification from SLCE was dismissed in error for several reasons. First, Turner contends that it should have been able to continue its claim because SLCE was an active tortfeasor, while Turner was no more than a passive tortfeasor. (*See* Christofedes Letter of June 21, 2001 at 2.) However, plaintiff's complaint alleges that Turner engaged in affirmative acts of wrongdoing, which precludes recovery for indemnification, which precludes an action by Turner against SLCE for indemnity. *See Orsini v. Kugel,* 9 F.3d 1042 (2d Cir.1993) (party who has participated in wrongdoing may not benefit from common law or implied indemnity); *Rockefeller University v. Tishman Construction Corp. of New York,* 232 A.D.2d 155, 647 N.Y.S.2d 513 (N.Y.App. Div.1996) (same).

■ As set forth in a prior opinion, *see Wausau Business Ins. Co. v. Turner Const. Co.,* 143 F.Supp.2d 336, 343 (S.D.N.Y.2001) (*Wausau I* ), because Turner's responsibility as construction manager was to oversee the work of the other contractors and subcontractors, it is not entitled to indemnity if it was negligent in meeting this obligation. *See Morse/Diesel, Inc. v. Trinity Industries, Inc.,* 859 F.2d 242, 247–48 (2d Cir.1988) (citing New York cases finding project managers with supervisory obligations over subcontractors liable for negligence); *Kenny v. George A. Fuller Co.,* 87 A.D.2d 183, 189, 450

N.Y.S.2d 551, 555 (N.Y.App.Div.1982) (noting, in context of New York Labor Law's provision for contractor liability, "[l]egislative purpose of placing absolute liability upon the party or parties responsible for coordinating and supervising the entire construction project."); *Carollo v. Tishman Constr. & Research Co.,* 109 Misc.2d 506, 440 N.Y.S.2d 437, (N.Y.Sup.Ct.1981) (finding passively negligent construction manager liable for active negligence of subcontractor because contract gave construction manager the penumbral obligation to coordinate the subcontractors and ensure the safety of the work site).

■ Turner next cites *Cubito v. Kreisberg,* 69 A.D.2d 738, 419 N.Y.S.2d 578 (N.Y.App.Div.1979), aff'd, 51 N.Y.S.2d 900, 434 N.Y.S.2d 991, 415 N.E.2d 979 (1980), in support of the argument that the Court erroneously applied an architectural malpractice standard to Turner's claims against SLCE in considering SLCE's motion for a directed verdict. Specifically, Turner contends that such simple negligence, rather than the malpractice standard, applies where, as here, the third-party plaintiff is not the architect's client. Yet *Cubito* addressed the question of when a cause of action accrues for the assertion of a bodily injury claim against a design professional. *Id.* In an action pertaining to professional misconduct, in contrast, the plaintiff must introduce evidence, most typically through expert testimony, regarding the standard of care and the professional's variance from that standard. *See Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8 (2d Cir.2000) (architectural malpractice); *D.D. Hamilton Textiles, Inc. v. Estate of Theodore Mate,* 269 A.D.2d 214, 703 N.Y.S.2d 451 (N.Y.App.Div.2000) (professional negligence). Turner failed to introduce any evidence of the standard of care applicable to architects in designing roofs, and there-fore has failed to introduce any substantial ground for a difference of opinion on a controlling question of law.

In sum, Turner has failed to meet the standard required by § 1292(b) to certify an interlocutory appeal of the order dismissing SLCE.

### 3. *Severance of Amtex*

■ Turner filed a motion to add Amtex as a necessary party to this action nearly two years after this litigation began. In a prior opinion, this Court severed Amtex from the trial due to the lateness of joinder and the potential prejudice to plaintiffs if the entire case were to be delayed, and to Amtex if it were forced to defend at trial less than three months after being joined. *Wausau Business Ins. Co. v. Turner Const. Co.,* No. 99 CIV 682 RWS, 2001 WL 460928 (S.D.N.Y. May 2, 2001) (*Wausau II*). Turner contends that as a result of severance, it was the only defendant left to defend on the issue of the operation of the exhaust fans, and that Amtex employee, Jesus Marin, was able to change his testimony at trial without risking exposure to Amtex. (Christofedes Letter of June 21, 2001 at 7.) In short, Turner and Aris argue that severing Amtex denied them due process of law.

Neither Turner nor Aris presents any issues of controlling law that would create a substantial ground for a difference of opinion that would justify certifying this question for an interlocutory appeal.

### 4. *Failure to Dismiss the Jury Pool*

■ During voir dire, a prospective juror stated in open court that he had previously worked with Turner and had come to mistrust them. The Court dismissed the prospective juror for cause but denied Turner's application to dismiss the entire jury pool. Whether to grant a motion to quash a jury venire for prejudicial

statements rests within the discretion of the trial court, and will not be reversed unless the Second Circuit finds that the district court abused its discretion. *See United States v. Smith,* 306 F.2d 596, 602, 603 (2d Cir.1962) (reversing trial court's decision to quash petit jury panel as "clearly erroneous," because "the mere awareness that some of their fellows had such prejudice as to require that they be excused cannot realistically be said to disqualify the jurors finally selected"), *cert. denied,* 372 U.S. 959, 83 S.Ct. 1012, 10 L.Ed.2d 11 (1963).

Turner has failed to proffer any controlling authority that would raise a substantial ground for a difference of opinion on this question. No order authorizing interlocutory appeal of the jury pool question will be issued.

### 5. *Argument on Percentage of Trident's Liability Covered by Settlement*

▪▪ Finally, Turner suggests that in closing, both counsel for Wausau and counsel for Trident argued "that Trident was only 2% to 3% liable and that therefore Trident had settled with plaintiffs commensurate with that percentage." (Christofdes Letter of June 21, 2001 at 8.) Turner contends that this argument was an improper attempt to "manipulate the jury" as to Trident's share of liability, a prejudicial act of which Turner bore the brunt. (*Id.*) Trident and Wausau contest that either counsel ever equated the settlement amount with Trident's proportional share of liability.

The transcript reveals that counsel for Trident stated that Trident settled with the plaintiffs "for about 2 to 3 percent of the amount that's claimed" and explained Trident's rationale for settling as follows:

> My client would do it because, as I told you right at the get-go, this was the beginning of the case. There is still a damage trial to come. You think this has been a harrowing experience? We get to do this all again. Unless, of course, we settle. That's why my client listens to the Judge, listens to Mr. Fallon and Mr. Kaplan, and at some point says, enough is enough, or, as I suspect you have already concluded, nothing's too much. That's why .... [P]art of it was, let's just be done with this.

(Tr. at 2818:7–8, 17–25, 2821:21–22.) Trident's counsel argued that the evidence demonstrated that Trident's share of liability was zero. (Tr. at 2818:11–14, 2836:19.)

Counsel for Central Synagogue explained the settlement by stating:

> We made the judgment that it was very likely, based on the credibility and the testimony of those people, that you were going to find that Trident had no responsibility. So if you could make a settlement for each for a modest amount rather than see the case lost to somebody, that's a prudent thing to do and the law encourages it.

(Tr. at 2908:3–8.) On the apportionment of liability, he stated:

> the parties who have responsibility for negligence in this case are the first three that are listed, Turner, Amis and Aris. Turner, we think because of its special role, has the overwhelming proportion of that responsibility. But I don't presume to say to you what you should do in allocating those percentages... But I'll mention the other two names that are listed there. Trident is listed because Turner sued them. Central Synagogue is listed because various defendants have said that somehow Central Synagogue is guilty of what is called comparative negligence, that we were

negligent too, and you should put some percentage in respect of that.

(Tr. at 2926: 9–14, 17–22.)

Counsel for Wausau described the settlement as follows:

> [Y]ou have heard today that only one of the parties involved in this case, and this party a peripheral third-party defendant, has stepped to the plate and offered us what was recommended, and as a result of the way the evidence went in, we accepted that offer from that party, Trident. And that was for 2 or 3 percent of the damages, a very small amount. But when it comes to deliberating, you shouldn't consider that settlement. What you should consider is, who is responsible for this fire and what portion of the overall damages should be assigned to each of them. And that goes from Trident at the bottom to Turner at the top. Whether they settled or not is irrelevant. What is relevant is, who is at fault for the fire at Central Synagogue on August 28, 1998?

(Tr. at 2937:19—2938:7.)

None of these arguments urged the jury to find Trident 2 to 3 percent liable, and even if they had, the jury found that Trident was not at all liable for the fire. Turner has failed to introduce any controlling law creating a substantial ground for a difference of opinion as to whether these closing arguments improperly prejudiced Turner's defense.

*Conclusion*

For the foregoing reasons, the motion is denied. No order granting leave to file an interlocutory appeal will issue on the grounds raised herein.

It is so ordered.