DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Buckeye Retirement Co., LLC, Ltd., appeals from the judgment of the Summit County Court of Common Pleas which granted summary judgment in favor of Appellees, Brat Automotive, Inc., et al. This Court affirms.
 I. {¶ 2} Appellees, Brat Automotive, Inc., ("Brat") and RB Automotive, Inc. ("RB") are Ohio corporations previously operating as Tuffy Associates Corp. ("Tuffy") franchises in Akron. On November 1, 1998, Tuffy provided financing to Brat and RB. In exchange, Tuffy received promissory notes and security interest in the business assets of both Brat and RB. In June 1999, Tuffy made arrangements with Bancorp Group, Inc. ("Bancorp") to take over financing of new Tuffy franchises. On June 22, 1999, Tuffy entered into a Franchisee Financing Agreement ("FFA") with Bancorp, under which Bancorp agreed to provide a $3,000,000 credit facility for Tuffy franchises.
 {¶ 3} Tuffy desired to liquidate the loans it had made to its franchisees. As a result, on June 22, 1999, Tuffy and Bancorp entered into a Note Purchase Agreement ("NPA") under which Bancorp purchased eight franchisee notes made payable to the order of Tuffy. Included in the sale were the Brat and RB notes and security agreements. Subsequently, on June 19, 2002, Bancorp assigned the Brat and RB notes and security agreements to The Cadle Company ("Cadle"). Brat and RB defaulted on the notes. Appellant, Buckeye Retirement Co., LLC, Ltd. ("Buckeye"), contends that Tuffy then acquired possession of Brat and RB's business assets. Tuffy does not deny this fact but contends that the former assets of Brat and RB are still located at the sites previously operated by Brat and RB.
 {¶ 4} Cadle declared the notes in default in June 2003. Cadle demanded payment from Tuffy of the amount due under the Brat and RB notes, or alternatively, an accounting for the business assets subject to security interests. Tuffy refused, challenging Cadle's standing as assignee of the NPA and the priority of its security interest. On February 26, 2004, Bancorp assigned the NPA to Cadle. Cadle then assigned the notes, security agreements and rights under the NPA to Buckeye.
 {¶ 5} On April 26, 2004, Buckeye filed a complaint against Tuffy, Brat and RB. In its complaint, Buckeye set forth two claims against Tuffy. The first claim alleged an action upon the NPA and asserted that Tuffy was liable with Brat and RB for the amounts due on the notes. The second claim alleged that Tuffy converted assets subject to the security agreements collateralizing the notes. Buckeye asserted claims against Brat and RB for the amounts due on the notes.
 {¶ 6} The trial court referred the matter to a magistrate for discovery and motions. Neither RB nor Brat defended the case. Buckeye moved for default judgment against Brat and RB for the amounts due under the notes. Concurrently, Buckeye moved for summary judgment against Tuffy as guarantor of the notes. Tuffy responded with a motion for summary judgment on Buckeye's cause of action upon the guarantor and conversion claims. The magistrate recommended that Buckeye's guarantor claim be dismissed but did not address the conversion claim. Buckeye objected to the magistrate's decision. On March 4, 2005, the trial court affirmed the magistrate's decision and dismissed Buckeye's case with prejudice. Buckeye appealed the dismissal. This Court dismissed the appeal for lack of a final, appealable order.
 {¶ 7} Upon remand, Buckeye filed a motion for reconsideration of the trial court's order granting summary judgment to Tuffy. On February 2, 2006, the trial court entered an order denying Buckeye's motion for reconsideration. The trial court specifically addressed Buckeye's conversion claim, reasoning that because Tuffy's guarantee had not been assigned to Buckeye, Buckeye had no interest in the property it alleged that Tuffy had converted. Buckeye timely appealed, raising three assignments of error for our review. We have combined Buckeye's first two assignments of error as they require the same analysis.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN REFUSING TO DECLARE TUFFY * * * IN BREACH OF THE GUARANTEES INCORPORATED INTO THE NOTE PURCHASE AGREEMENT."
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT ERRED IN GRANTING TUFFY SUMMARY JUDGMENT UPON PLAINTIFF'S CONTRACT CLAIM."
 {¶ 8} In Buckeye's first two assignments of error it contends that the trial court erred in granting Tuffy's motion for summary judgment on Buckeye's breach of the note purchase agreement claim. We disagree.
 {¶ 9} Buckeye has appealed from the denial of its motion for reconsideration. While there is no rule that allows a party to move a trial court for reconsideration of a final judgment, this case involves unique circumstances. Pitts v. Dept. ofTransportation (1981), 67 Ohio St.2d 378, 380. In this case, we previously ruled that the trial court's order granting Tuffy's motion for summary judgment was not a final, appealable order. Consequently, the trial court was permitted to rule on the motion for reconsideration. In its February 2, 2006 judgment entry, the trial court found no error in its decision to grant Tuffy's motion for summary judgment and therefore denied Buckeye's motion for reconsideration. As the court disposed of all the claims in this judgment entry, the order was final and appealable.
 {¶ 10} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party.Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 11} Pursuant to Civil Rule 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated;
(2) the moving party is entitled to judgment as a matter of law; and
(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 12} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732,735.
 {¶ 13} The dispute herein concerns whether the agreement Tuffy originally made with Bancorp to indemnify Bancorp in the event of default by either Brat and/or RB is still effective, allowing Buckeye to recover on the notes as against Tuffy upon the failure of Brat and/or RB to honor the contract obligations of the two notes.
 {¶ 14} "The construction of written contracts and instruments of conveyance is a matter of law." Christe v. GMS Mgt. Co.,Inc. (1997), 124 Ohio App.3d 84, 88, quoting Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Inland Refuse Transfer Co. v.Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322.
 {¶ 15} Tuffy contends that the plain language of the FFA of June 22, 1999 restricts its duty to pay successive owners except by the terms incorporated by reference in the NPA, also executed on June 22, 1999. Tuffy asserts that this FFA had never been assigned to Buckeye. In addition, Tuffy argues that it did not guarantee any payments pursuant to the NPA and therefore, it is entitled to judgment as a matter of law on Buckeye's breach of the NPA cause of action. In support of its motion for summary judgment, Tuffy relied upon (1) the FFA, (2) the asset sale agreement by and between Bancorp and Cadle, (3) the Notice to Bidders issued by Bancorp and (4) the affidavit of Karen Vellequette, Chief Financial Officer of Tuffy.
 {¶ 16} Buckeye did not respond with a brief in opposition to Tuffy's motion for summary judgment. On appeal, Buckeye contends that Tuffy's guarantee arises from the NPA, which incorporated by reference the guarantee language of the FFA. Buckeye additionally asserts that Tuffy was a surety who was primarily liable for the debts of others. Buckeye claims that Tuffy has not sufficiently supported its summary judgment motion because Tuffy relied solely on the affidavit of Karen Vellequette for the proposition that it did not have guarantor obligations under the NPA.
 {¶ 17} In the trial court's March 4, 2005 order in which it affirmed the magistrate's decision, the trial court determined that the integration and severability provision mandated that the NPA and FFA be read together. The court then reasoned that the requirement for consent to assignment in the FFA, set forth in Article 5.12 of the FFA, applied to the NPA. In the trial court's February 2, 2006 order, it explained that because Tuffy did not consent to an assignment of the FFA, Buckeye had no right of recovery from Tuffy.
 {¶ 18} Buckeye contends that the trial court erred in using the restrictions upon assignment in the FFA to override the terms in the NPA. Buckeye claims that the trial court erroneously interpreted the limitation on assignment clause from the FFA as prevailing over Article IV of the FFA which set forth Tuffy's obligations as guarantor in the event of a franchisee's default upon any loan made to it by Bancorp. Buckeye contends that the NPA incorporated Article IV of the FFA by reference. It argues that, under TRINOVA Corp. v. Pilkington Bros., PLC (1994),70 Ohio St.3d 271, 276, courts may not use one document to create an ambiguity in or override the terms of another.
 {¶ 19} We agree with the trial court's finding that, under the integration provision of the NPA, the NPA and FFA must be read together. Section 8.7 of the NPA governs Integration and Severability and provides:
"This Agreement and the Franchisee Financing Agreement embody the entire agreement and understanding between the Purchaser and the Seller, and supersede all prior agreements and understandings relating to the subject matter hereof. In case any one or more of the provisions contained in this Agreement or in any Promissory Notes and Related Agreements, or any application thereof, shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein, and any other application thereof, shall not in any way be affected or impaired thereby."
 {¶ 20} Article 5.12 of the FFA provides that the "[a]greement may not be assigned by either Bancorp or Tuffy without the consent of the other party[.]" Reading the two provisions together, we find that the restriction on assignment was incorporated into the NPA. Therefore, Bancorp was obligated to obtain Tuffy's consent before it could sell its interest in the FFA.
 {¶ 21} Upon review of the NPA and FFA, we find that Tuffy had only guaranteed repayment of the financing through the FFA. The NPA clearly states this:
"WHEREAS, Seller (Tuffy) and the Purchaser (Bancorp Group) have executed a Franchisee Financing Agreement dated June 22, 1999 (the "Franchisee Financing Agreement"), under which the Purchasers will provide certain financing to franchisees of Seller, and Seller guarantees repayment of such financing on the franchisees' behalf[.]"
Therefore, Tuffy's guarantee could only be assigned through the assignment of the FFA.
 {¶ 22} This interpretation is also reflected in Bancorp's Notice to Bidders ("Notice"). The warning Bancorp provided to bidders through its Notice informed them that the FFA required Tuffy's consent before Bancorp could sell its interest in the FFA. Furthermore, the Notice apprised bidders that the NPA and FFA were so closely related that Bancorp sought Tuffy's consent on Bancorp's assignment of its interest in both the FFA and the NPA. The Notice specifically stated:
"Tuffy has not yet consented on any of these matters. Therefore bidders should be aware that (1) some negotiations between Bancorp, Tuffy and the successful bidder may be necessary before the assignment transaction is consummated and (2) Bancorp will not be able to convey Pool BG-300 without Tuffy's written consent, as outlined above."
 {¶ 23} Consequently, purchasers of the note were on notice that if they purchased the notes without the assignment of the FFA, they would not obtain Tuffy's guarantee of the notes. There is no dispute that Tuffy never consented to an assignment of the FFA. Further, there is no evidence that the FFA had been assigned by Bancorp. The FFA could not be assigned to Cadle and thereafter, to Buckeye, unless it had first been assigned by Bancorp.
 {¶ 24} Buckeye also contends that even if the non-assignment clause were incorporated into the NPA, a breach of that restriction would not discharge Tuffy from liability. Buckeye asserts that restrictions on transfer are disfavored under Michigan law and will not be enforced if the restriction results in forfeiture. Buckeye cites Michigan law because the NPA contained a Michigan choice of law provision.
 {¶ 25} Buckeye's argument lacks merit. First and foremost, the notes were assigned pursuant to the NPA which is how Buckeye obtained its judgment against Brat and RB for their failure to pay the amounts due on the notes. Second, the guarantees Tuffy made to Bancorp only arose from the FFA, not the NPA. Bancorp did not assign the FFA because it contained a non-assignment clause.[1]
 {¶ 26} The validity of an assignment clause is only pertinent if an agreement contains such a clause. Because the FFA was not assigned, Buckeye's argument is inapplicable to this matter.
 {¶ 27} Given our finding that Tuffy cannot be held liable as a guarantor on the NPA, we need not consider Buckeye's argument that Tuffy was a surety. Because our disposition of this issue rests solely on the operative documents (the NPA, FFA and Notice), we find no merit in Buckeye's contention that Tuffy relied only on Karen Vellequette's affidavit to support its arguments.
 {¶ 28} Viewing the facts in the light most favorable to Buckeye, we find no genuine issue of material fact regarding Buckeye's breach of the NPA claim. Accordingly, Tuffy is entitled to judgment as a matter of law on this claim. Buckeye's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED IN GRANTING TUFFY'S MOTION FOR SUMMARY JUDGMENT UPON PLAINTIFF'S CONVERSION CLAIM WITHOUT REQUIRING TUFFY TO DEMONSTRATE THAT THERE WERE NO ISSUES OF FACT AND THAT IT WAS ENTITLED TO JUDGMENT AS A MATTER OF LAW."
 {¶ 29} In its third assignment of error, Buckeye contends that the trial court erred in granting summary judgment in favor of Tuffy on its conversion claim without requiring Tuffy to demonstrate that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. We disagree.
 {¶ 30} In the instant matter, Buckeye claims it had obtained a security interest in the assets of Brat and RB through its purchase of the NPA. It asserts that Tuffy converted these assets by unlawfully exercising dominion over these assets. Buckeye first claims that Tuffy did not provide the trial court with adequate materials to meet its initial burden on this claim under Civ.R. 56(C). We observe that Buckeye failed to raise this argument in the trial court. As such, Buckeye has waived this argument on appeal and we decline to address it. Holman v.Grandview Hosp. Med. Ctr. (1987), 37 Ohio App.3d 151, 157
("Issues not raised and tried in the trial court cannot be raised for the first time on appeal").
 {¶ 31} Buckeye additionally contends that Tuffy admitted that it acquired possession of Brat and RB assets. It claims that this admission is Civ.R. 56(C) evidence that the trial court should have considered when ruling on Tuffy's summary judgment motion. However, Buckeye provided no evidence to support its contention that Tuffy made this admission. See App.R. 16(A)(7). We similarly decline to address this argument.
 {¶ 32} In granting summary judgment on Buckeye's conversion claim, the trial court held that the claim failed because there was not a proper assignment and, therefore, Buckeye had no interest in the property it alleged that Tuffy converted. While we are not persuaded by the trial court's reasoning, we reach the same conclusion.
 {¶ 33} Tuffy contends that it was entitled to summary judgment on Buckeye's conversion claim because Buckeye had not presented evidence to support this claim. "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Chef Italiano v.Crucible Dev. Corp., 9th Dist. No. 22415, 2005-Ohio-4254, at ¶26, quoting Joyce v. Gen. Motors Corp. (1990),49 Ohio St.3d 93, 96.
 {¶ 34} As noted, conversion requires the "wrongful exercise" of dominion over Buckeye's property. However, Buckeye failed to set forth evidence that Tuffy exercised control over the assets in exclusion of Buckeye's rights. In its motion for summary judgment, Tuffy relied on the affidavit of Karen Vellequette to support its contention that (1) the assets of Brat and RB remain on the premises previously operated by Brat and RB, (2) that Buckeye does not possess the first security interest in Brat and RB's assets and (3) that no entity has attempted to foreclose on the business assets of the former franchisees.
 {¶ 35} Buckeye failed to meet its burden under Civ.R. 56 of refuting Tuffy's evidence that it did not convert these assets. The non-moving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle, 75 Ohio App.3d at 735. Buckeye simply repeated its allegation that Tuffy continues to exercise wrongful dominion and control over the assets in derogation of Buckeye's property interests without setting forth any evidence to support this allegation. In light of the uncontroverted evidence that Tuffy has not improperly converted such interest, we find that summary judgment was properly granted in Tuffy's favor on the conversion claim. Buckeye's third assignment of error is overruled.
 III. {¶ 36} Buckeye's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, P.J. Boyle, J. concur.
[1] The non-assignment clause provides:
"5.12 Assignment. This Agreement may not be assigned by either Bancorp or Tuffy without the consent of the other party; provided, however, Bancorp may assign this Agreement to an affiliated entity that controls, is controlled by or is under common control with Bancorp. Notwithstanding any assignment pursuant to this Section, the assignor shall remain liable for all of its obligations under this Agreement and shall not be relieved of any such obligations by such assignment."